| | |
|---|---|
| Brent R. McIlwain<br>Texas Bar No. 24013140<br>Christopher A. Bailey<br>Texas Bar No. 24104598<br>HOLLAND & KNIGHT LLP<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br>Telephone: 214.969.1700<br>E-Mail: brent.mcilwain@hklaw.com<br>        chris.bailey@hklaw.com | Jeremy M. Downs (*pro hac vice* pending)<br>Illinois Bar No. 6272155<br>Steven J. Wickman (*pro hac vice* pending)<br>Illinois Bar No. 6342929<br>GOLDBERG KOHN LTD.<br>55 East Monroe Street, Suite 3300<br>Chicago, IL 60603<br>Telephone: 312.201.4000<br>Email: jeremy.downs@goldbergkohn.com<br>        steven.wickman@goldbergkohn.com |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>Stoli Group (USA), LLC, *et al.*,[1]<br><br>Debtors. | § Chapter 11<br>§<br>§ Case No.: 24-80146-swe11<br>§<br>§ (Joint Administration Requested)<br>§ |

### DEMAND FOR ADEQUATE PROTECTION, LIMITED OBJECTION TO CASH COLLATERAL MOTION AND RESERVATION OF RIGHTS OF FIFTH THIRD BANK, NATIONAL ASSOCIATION, AS SENIOR SECURED LENDER

Fifth Third Bank, National Association, as senior secured lender (the "Lender"), by its undersigned counsel, pursuant to sections 361 and 363(e) of Title 11 of the United States Code (the "Bankruptcy Code"), hereby files this demand for adequate protection, initial objection to *Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying the Automatic Stay; (iv) Scheduling a Final Hearing; and (v) Granting Related Relief* (Docket No. 10, the "Cash Collateral Motion")[2] and reservation of rights, and respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are Stoli Group (USA), LLC (5602) and Kentucky Owl, LLC (3826). The Debtors' address is 135 East 57th Street, 9th Floor, New York City, New York.

[2] Unless otherwise indicated, capitalized terms used as defined terms herein have the meanings given thereto in the Cash Collateral Motion.

**PRELIMINARY STATEMENT**

1. Pursuant to its Prepetition Loan Documents with Stoli Group (USA), LLC ("Stoli USA"), Kentucky Owl, LLC ("KO" and, together with Stoli USA, the "Debtors"), Lender holds first priority security interests in substantially all of the Debtors' property to secure approximately $78 million as of the Petition Date. Lender's collateral includes, among other things, all of the Debtors' cash collateral, accounts receivable and proceeds thereof.

2. Generally, Lender does not object to the Debtors using cash collateral to maintain their current operations while the parties conduct expedited diligence, discussions and possibly discovery. However, Lender believes that Debtors' proposed cash collateral use—even on an interim basis—is likely to consume a material amount of Lender's collateral. The Budget for the proposed interim cash collateral order and related detail shared with Lender since the Petition Date indicate that the Debtors are requesting to spend cash collateral and sell inventory without sufficient replacement collateral for the foreseeable future. Replacement liens and adequate protection claims against Lender's existing collateral do little to address this; Lender already has prepetition liens on substantially all of the Debtors' assets. The Debtors' Declaration gives the impression that they should be allowed to impact the collateral this way because Lender is significantly over-secured. The extent of Lender's equity cushion is speculative at this point, and nothing in the Debtors' pleadings addresses the end to which they are asking to erode it. Absent a clear showing of adequate protection of Lender's interests by the Debtors and alignment around an agreeable path forward in these cases (neither of which presently exist), any support from Lender to an interim cash collateral order will likely turn into a contested hearing.

3. Accordingly, Lender hereby (a) makes a demand for adequate protection of its interests in all cash collateral and other collateral that Debtors propose to use, (b) makes a limited objection to certain unresolved aspects of the Debtors' proposed interim order, (c) reserves

Lender's right to object to any further interim or final orders approving Debtors' use of cash collateral, and (d) requests that the Court establish discovery deadlines and procedures in connection with this ongoing proceeding.

## **BASES FOR DEMAND**

4. In accordance with section 363(e) of the Bankruptcy Code, the Lender demands adequate protection of its interests in the Prepetition Collateral, including Cash Collateral.

5. A secured creditor is entitled to adequate protection of its interest in collateral when (1) it is prevented from exercising its rights and remedies against its collateral by the automatic stay and (2) a debtor or trustee proposes to use its collateral without such creditor's consent. *See* 11 U.S.C. §§ 361, 362(d), 363(e); *see also In re Omni Lion's Run, L.P.*, 578 B.R. 394, 399 (Bankr. W.D. Tex. 2017) ("Secured creditors are entitled to adequate protection of their security interests against the depreciation of collateral prior to the confirmation of a plan."); *In re Argubright*, 532 B.R. 888, 894 (Bankr. W.D. Tex. 2015) ("While the automatic stay preserves the status quo, secured creditors are also entitled to adequate protection so that they may recover on the value of their secured claim."). "The concept of adequate protection is derived from the fifth amendment protection of property interests as enunciated by the Supreme Court." *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 247 B.R. 38, 44 (S.D.N.Y. 2000) (citation omitted); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1396 (5th Cir. 1986) ("The concept is derived from the fifth amendment protection of property interests.").

6. The purpose of adequate protection is to ensure that the secured party receives the value for which it bargained prepetition. *See, e.g., In re Geijsel*, 480 B.R. 238, 267 (Bankr. N.D. Tex. 2012) (*citing In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Bluebird Partners, L.P. v. First Fid. Bank*, 896 F. Supp. 152, 154 (S.D.N.Y. 1995) ("Adequate protection compensates the secured creditor for the diminution in value of the collateral during the period in

which the automatic stay prevents the creditor from repossessing the collateral"); *In re Timbers of Inwood Forest Assocs.*, 793 F.2d at 1388 (noting section 361(1) of the Bankruptcy Code provides for adequate protection of creditor's interest to the extent the automatic stay results in decrease in the value of such interest); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983) ("The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.").

7. What constitutes "adequate protection" is a factual determination that is made on a case-by-case basis. *In re Mathis*, 64 B.R. 279, 284 (N.D. Tex. 1986). While adequate protection may take many different forms, section 361 of the Bankruptcy Code lists several potential varieties of protection, including periodic cash payments, replacement liens, and any other relief that "will result in the realization. . . of the indubitable equivalent of [the secured creditor's] interest in such property." 11 U.S.C. § 361.

8. The language of section 363(e) is straightforward and non-discretionary, and it imposes only the most minimal of burdens on the moving creditor. If a creditor (i) has an "interest in property" and (ii) makes a "request" for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see also In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004) (noting that "section 363(e) essentially requires that where a creditor can demonstrate it has a security interest in the property, such creditor is entitled to adequate protection of such interest."); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity."). Beyond establishing these two simple prerequisites, nothing more is required of the creditor – not even a hearing. *See* 11 U.S.C. § 363(e) ("…with or without a hearing…").

4

9. Where a creditor establishes "the validity, priority, or extent of [its] interest," the debtor bears the burden of proof on "the issue of adequate protection." *See* 11 U.S.C. § 363(p). While a debtor may address the form of adequate protection, a creditor's right to adequate protection is established simply by virtue of the creditor's request. *See In re Torres Dev., L.L.C.*, 413 B.R. 687, 695 (Bankr. S.D. Tex. 2009); *In re Carbone Cos., Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008).

10. In accordance with the Bankruptcy Code, applicable non-bankruptcy law and the Prepetition Loan Documents, the Lender is clearly entitled to adequate protection.

**LIMITED OBJECTIONS TO PROPOSED INTERIM CASH COLLATERAL ORDER**

11. Since the Petition Date, Lender has worked quickly to provide feedback to the Debtors regarding their proposed interim cash collateral order and related Budget. This is not a case where the parties were aligned on a chapter 11 filing, much less the specifics of cash collateral consent. The Debtors have accepted a large amount of Lender's comments to the interim order, but at least two critical issues remain unresolved.

12. First, the proposed interim cash collateral order does not contemplate using any cash collateral for adequate protection payments to Lender (for principal, interest, fees or otherwise), while it seeks to pre-authorize use of cash collateral for payments of Debtors' professional fees and expenses that might be allowed at a later time. To be clear, the Lender has not consented and does not consent to a carveout in these cases for the Debtors' professional fees and expenses, and it does not otherwise consent to the use of cash collateral under an interim order to pay any such amounts. Lender recognizes that carveouts are a typical feature of complex chapter 11 cases, but that is because the vast majority of such cases result in consensual cash collateral or DIP financing arrangements between debtors and lenders – often driven, in large part, by the need for the debtor's professionals to be assured payment for months' worth of services. Lender is

genuinely hopeful that it reaches such a consensual arrangement in these cases, but the parties are not there yet. And, there is literally no legal basis for the Court to impose a carveout on a secured lender over its objection. Likewise, nothing in the record remotely supports a pre-determined surcharge of Lender or its collateral for the Debtors' professional fees. Most relevant to this proceeding, the Debtors' evidence is woefully inadequate at this stage for the Court to find that the Lender's interests in its collateral will be adequately protected after the Debtors pay all of their critical operating expenses, plus nearly $700,000 of professional fees that are not critical to the Debtors' operations pending a Final Hearing. To Lender, this adds insult to injury because any cash collateral available beyond the purely critical operating needs of the Debtors should be paid to Lender (or at least set aside) to protect Lender's interests in its collateral as a result of accrued and accruing postpetition interest and fees and the apparent lack of sufficient replacement collateral. Lender has proposed language to the Debtors for the proposed interim cash collateral order to clarify that any allowance of, and use of cash collateral to pay, professional fees and expenses are subject to further order of the Court, but Lender understands this is not acceptable to the Debtors.

13. Second, the proposed interim cash collateral order lacks critical reporting requirements, which the Debtors likely refuse because they could hurt the Debtors' future adequate protection arguments. The interim order does not require the Debtors to deliver the weekly collateral reporting that they have been routinely delivering to Lender for months with their borrowing base certificates. This is the reporting under the Prepetition Loan Documents that most directly assesses the extent to which Lender's overall collateral position is improving or worsening over time. Such regular assessments are extremely important for the Debtors and Lender. They give all parties a systematic view of real-time changes in the Lender's collateral, in a way that is

6

immediately usable and helps the parties better understand and discuss raw reporting of sales, purchases, credits and collections. This crucial point in the Debtors' case is not the time when collateral reporting discipline should or needs to be weakened; requiring it to continue on a weekly basis should be part of Lender's adequate protection package in the interim cash collateral order. Lender has proposed specific changes to the proposed interim order to address this short-coming and related reporting concerns, which Lender understands the Debtors are considering.

## **REQUEST FOR DISCOVERY ORDER**

14. Without an agreement with the Debtors concerning cash collateral use or postpetition financing on a longer-term basis, Lender will likely be forced to conduct significant written and testimonial discovery in preparation for a next hearing on the Cash Collateral Motion.

15. On this basis, Lender anticipates issuing or conducting some or all of the following to the Debtors prior to a Final Hearing:

    (a)      at least one set of interrogatories,

    (b)      one set of requests for production of documents,

    (c)      one set of requests for admission,

    (d)      a deposition of the Debtors' Rule 30(b)(6) witness,

    (e)      a deposition of the Debtor's Global Chief Executive Officer,

    (f)      a deposition of the Debtors' Chief Restructuring Officer, and

    (g)      a deposition of each other witness and expert that the Debtors' intend to call at trial.

16. While such discovery would necessarily be quite expedited, without it neither the parties nor the Court will be able to determine if a request for further use of cash collateral by the Debtors is appropriate or not.

17. Accordingly, Lender requests that the Court enter an order that (a) requires the parties to immediately meet and confer, (b) authorizes Lender to conduct such written discovery and depositions (including the issuance of subpoenas), and (c) establishes a process for any discovery disputes (such as failures by the Debtors to promptly or fully respond to Lender's discovery) to be determined by the Court if necessary.

### **RESERVATION OF RIGHTS**

Lender reserves its rights to file additional responses or make additional statements at the interim hearing with respect to the Cash Collateral Motion, as well as any further hearings held thereon.

Dated:  December 2, 2024
           Dallas, Texas

Respectfully Submitted,

By: /s/ Christopher A. Bailey
Brent R. McIlwain
Christopher A. Bailey
HOLLAND & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9481
brent.mcilwain@hklaw.com
chris.bailey@hklaw.com

- and -

Jeremy M. Downs
Steven J. Wickman
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(312) 201-4000
jeremy.downs@goldbergkohn.com
steven.wickman@goldbergkohn.com

*Counsel to Fifth Third Bank, National Association*

8

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 2, 2024, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) System on all parties registered to receive electronic notice in this case.

*/s/ Christopher A. Bailey*
Christopher A. Bailey