Brent R. McIlwain
Texas Bar No. 24013140
Christopher A. Bailey
Texas Bar No. 24104598
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700
E-Mail: brent.mcilwain@hklaw.com
         chris.bailey@hklaw.com

Jeremy M. Downs (admitted *pro hac vice*)
Illinois Bar No. 6272155
Steven J. Wickman (admitted *pro hac vice*)
Illinois Bar No. 6342929
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: 312.201.4000
Email: jeremy.downs@goldbergkohn.com
       steven.wickman@goldbergkohn.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Stoli Group (USA), LLC, *et al.*,[1] | § | Case No.: 24-80146-swe11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

**FIFTH THIRD BANK, NATIONAL ASSOCIATION'S DEMAND FOR ADEQUATE PROTECTION, OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL WITHOUT LENDER'S CONSENT AND, IN THE ABSENCE OF SUCH CONSENT, MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT THESE CHAPTER 11 CASES TO CHAPTER 7**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Fifth Third Bank, National Association, as senior secured lender (the "Lender"), by its undersigned counsel, pursuant to sections 361, 363(e) and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code"), hereby files this (i) demand for adequate protection of its interests in any of the Lender's Collateral used by the Debtors after the "Termination Date" of the Final

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are Stoli Group (USA), LLC (5602) ("Stoli USA") and Kentucky Owl, LLC (3826) ("Kentucky Owl").

5591.0199

Cash Collateral Order,[2] (ii) objection to the Debtors' *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Continue Use of Cash Collateral and (II) Granting Related Relief* (Docket No. 303, the "Emergency Motion"), and (iii) in the absence of Lender's consent to the Debtors' continued use of Cash Collateral, motion to appoint a chapter 11 trustee or convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (this "Demand and Objection"). In support of the foregoing, the Lender respectfully states as follows:

## PRELIMINARY STATEMENT

As was previewed before the Court on March 7, 2025, the Debtors' postpetition performance has been quite poor. This includes both the Debtors' economic and operational performance.

Since the petition date, the Debtors have reported a series of large Collateral losses that also require Stoli USA to cease operating as a going-concern, like its co-debtor, Kentucky Owl. Kentucky Owl is already conducting an orderly liquidation, as it seeks bulk buyers for substantially all of its assets. Stoli USA has now eroded so much of the Lender's Collateral that this outcome seems inescapable. The following chart, all based upon the Debtors' reporting to the Lender, summarizes the situation:[3]

---

[2] Unless otherwise indicated, capitalized terms used as defined terms herein have the meanings given thereto in the *Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* (Docket No. 188, the "Final Cash Collateral Order").

[3] The collateral reporting received by Lender nearest the petition date was dated November 22, 2024, which was five days prior to the petition date. The collateral reporting received by Lender nearest the Final Hearing was dated January 10, 2025, which was one week prior to the Final Hearing.

2

| Gross Asset Values and Borrowing Base Overadvance Reported by Stoli USA | | | | |
|---|---|---|---|---|
| | 11/22/24 | 01/10/25 | 03/21/25 | Total |
| Cash | $ - | $ 3,348,131 | $ 796,381 | |
| Inventory | 42,667,369 | 38,251,267 | 34,624,882 | |
| Accounts Rec. | 23,153,134 | 19,704,437 | 6,549,771 | |
| Total Assets | $ 65,820,503 | $ 61,303,835 | $ 41,971,034 | |
| Total Assets Chg. | | (4,516,667) | (19,332,802) | (23,849,469) |
| Over Advance | $ (7,077,593) | $ (6,844,377) | $ (18,370,366) | |
| Over Advance Chg. | | $ 233,216 | $ (11,525,989) | (11,292,774) |
| Unpaid Professional Fee Carveout | $ - | $ 1,545,000 | $ 3,570,000 | |

Without the contribution of significant amounts of new cash and collateral from third parties (*e.g.*, the equity holders that hope to own a reorganized Stoli USA) to support the Debtors' liquidity needs and repair the Lender's Collateral position, the depth of Stoli USA's losses have made reorganization and full repayment of the Lender's secured claims unlikely. The Debtors do not have enough Cash Collateral to assure Stoli USA will be administratively solvent even if they could adequately protect the Lender's interests (which they cannot). As a result, the Final Cash Collateral Order should not be extended, and any further Cash Collateral use should be subject to the Lender's consent in connection with an orderly wind-down and sale of the Debtors' remaining assets. If the Debtors are unable or unwilling to conduct such a value maximizing process, the Court should either appoint a chapter 11 trustee to conduct it or convert these Chapter 11 Cases to chapter 7.

Not far behind the severity of Debtors' asset declines are the Debtors' reporting deficiencies and cash management failures. Throughout these cases, the Debtors have failed to provide complete, reliable and timely reporting pursuant to the Court's prior orders. The Lender's initial concerns in this regard focused on borrowing base information. As these Chapter 11 Cases continued, it became clear that the Debtors' reporting was deficient and erroneous in several additional respects.

Accordingly, the Lender responded with requests for supporting information (*e.g.*, invoices and bills of lading), but the Debtors chose in their words not to "prioritize" the Lender's requests. After weeks of back-and-forth without progress, the Lender issued a Default Notice in late February 2025 listing dozens of basic but unanswered financial and Collateral information requests. The Default Notice was clearly needed, since the Lender received substantially more information from the Debtors in the two days following its issuance than the Lender had received previously.

What's now been deduced from the Debtors' reporting is that the Debtors paid S.P.I. Spirits (Cyprus) Limited (a non-debtor affiliate who supplies its vodka, "SPI") at least $1.8 million more in the first seven (7) weeks of these Chapter 11 Cases than the Debtors received in invoices for product from SPI during such period. The Lender has repeatedly asked for invoices and bills of lading to support these payments, but the Debtors either do not have them or do not want to provide them – perhaps because of what they might show (*e.g.*, unauthorized prepayments or payments on account of prepetition deliveries).

A similarly improper funneling of money to a non-debtor affiliate also appears to have happened with Louisiana Spirits, LLC (non-debtor affiliate who bottles certain non-vodka inventory for Stoli USA, "Louisiana Spirits"). In January 2025, Louisiana Spirits issued a $785,221 invoice to Stoli USA for the sale of "Maighstir" branded bourbon from Louisiana Spirits to Stoli USA. Stoli USA then paid Louisiana Spirits nine (9) payments of varying amounts towards such invoice, totaling $628,000, through March 21, 2025. Stoli USA recently received substantially all of the invoiced Maighstir bourbon into Stoli USA's warehouse in New Jersey. However, Louisiana Spirits did not own any Maighstir bourbon; it only holds Maighstir bourbon owned by Kentucky Owl that was previously bottled by Louisiana Spirits for Kentucky Owl. Nevertheless, Louisiana Spirits did *not* remit the payments from Stoli USA to Kentucky Owl (which would have been available to fund

4

expenses under the Budget) or remit the funds to the Lender. Instead, Louisiana Spirits kept or used the payment from Stoli USA.

As best as the Lender can determine, the Debtors have sent at least $2.4 million of much needed Cash Collateral out of these estates to non-debtor affiliates without receiving anything in return. These are only the improper payments that the Lender has been able to find; it may not be all of them. The weakness of the Debtors' financial systems and cash management controls not only allowed such improper payments to be made, but they have also frustrated the Lender's attempts to protect against the erosion of its Collateral position during these cases. Unless such reporting and cash management problems can be repaired and prevented going-forward, it is a near-certainty that the Lender's Collateral position will continue to erode and improper payments will continue.

As unfortunate as it may be (especially for the Lender), absent a significant cash infusion and new collateral pledged to the Lender, the Court should only permit the Debtors to continue to use Cash Collateral to conduct an orderly liquidation of Stoli USA's assets and continue the orderly liquidation of Kentucky Owl's assets, pursuant to a greatly reduced budget and an order that is acceptable to the Lender. If the Debtors are unable or unwilling to conduct such a process, then the Court should appoint a chapter 11 trustee to undertake that process or convert these cases to chapter 7.

**DEMAND FOR ADEQUATE PROTECTION AND
OBJECTION TO CASH COLLATERAL USE WITHOUT LENDER'S CONSENT**

1.  In accordance with section 363(e) of the Bankruptcy Code, the Lender hereby repeats its demand for adequate protection of its interests in the Collateral during these Chapter 11 Cases.

2.  What constitutes "adequate protection" is a factual determination that is made on a case-by-case basis. *In re Mathis*, 64 B.R. 279, 284 (N.D. Tex. 1986). While adequate protection

5

may take many different forms, section 361 of the Bankruptcy Code lists several potential varieties of protection, including periodic cash payments, replacement liens, and any other relief that "will result in the realization. . . of the indubitable equivalent of [the secured creditor's] interest in such property." 11 U.S.C. § 361.

3. The language of section 363(e) is straightforward and non-discretionary, and it imposes only the most minimal of burdens on the moving creditor. If a creditor (i) has an "interest in property" and (ii) makes a "request" for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see also In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004) (noting that "section 363(e) essentially requires that where a creditor can demonstrate it has a security interest in the property, such creditor is entitled to adequate protection of such interest."); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity."). Beyond establishing these two simple prerequisites, nothing more is required of the creditor – not even a hearing. *See* 11 U.S.C. § 363(e) ("…with or without a hearing…").

4. Where a creditor establishes "the validity, priority, or extent of [its] interest," the debtor bears the burden of proof on "the issue of adequate protection." *See* 11 U.S.C. § 363(p). While a debtor may address the form of adequate protection, a creditor's right to adequate protection is established simply by virtue of the creditor's request. *See In re Torres Dev., L.L.C.*, 413 B.R. 687, 695 (Bankr. S.D. Tex. 2009); *In re Carbone Cos., Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008).

5. In accordance with the Bankruptcy Code, applicable non-bankruptcy law, the Prepetition Loan Documents, and the Final Cash Collateral Order (including, without limitation,

the stipulations of the Debtors contained therein), the Lender is clearly entitled to adequate protection.

6. The provisions for adequate protection in the Final Cash Collateral Order have been inadequate for several weeks due to the significant erosion of Collateral value by the Debtors. Much more would be needed to adequately protect the Lender's interests after the Termination Date if Stoli USA continues operating as it has been. Since the Debtors do not have any unencumbered assets or other value to offer the Lender as additional adequate protection (other than avoidance actions), a third party such as the Debtors' ownership would need to contribute significant amounts of cash and other new collateral to keep the Debtors cash positive and adequately protect the Lender's interests. An orderly wind-down and disposition of the Debtors' remaining assets is the next best alternative under the circumstances. The Lender is prepared to negotiate with the Debtors on an order and budget to do that for the Court's immediate consideration.

7. Given the circumstances (*i.e.*, the Debtors cannot demonstrate adequate protection of Lender's interests and do not have enough cash to pay accrued and accruing administrative expenses), the Debtors fail to meet the requirements under Bankruptcy Code section 363(c)(2)(B) to continue use of the Lender's Cash Collateral, and they do not have the Lender's consent under Bankruptcy Code section 363(c)(2)(A) except in connection with an orderly wind-down and liquidation process, subject to an acceptable budget.

**BASIS FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, CONVERSION OF THESE CASES TO CHAPTER 7**

8. Section 1104(a) of the Bankruptcy Code states:

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

7

>    (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
>    (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

9. Here, both subsections (1) and (2) of Bankruptcy Code section 1104(a) are applicable. Cause exists due to the Debtors' repeated misuse of critical Cash Collateral to benefit non-debtor affiliates Louisiana Spirits and SPI to the detriment of the Debtors. Such conduct clearly fits within one of the examples of "cause" in Bankruptcy Code section 1104(a)(1). Likewise, if the Debtors are unable to obtain the Lender's consent to future Cash Collateral use on a going-concern basis, and if the Debtors will not cooperatively conduct an orderly wind-down, then appointment of a chapter 11 trustee is in the best interests of creditors and these estates to maximize remaining asset values and prosecute valuable claims of the Debtors.

10. Section 1112(b) of the Bankruptcy Code provides in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b).

11. The term "cause" includes, among other things, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

8

12. Under the circumstances, the Debtors are not entitled to use Cash Collateral and have no means by which to administer their estates after March 31, 2025, without the Lender's consent. All or substantially all of the Debtors' assets (other than avoidance actions) are encumbered by Lender's Prepetition Liens and Replacement Liens. Due to the large erosion of the Lender's Collateral position, the Lender likely holds a superpriority administrative expense claim under Bankruptcy Code section 507(b) as well. The Debtors simply have nothing left to offer Lender in consideration of the Cash Collateral and other Collateral the Debtors need to use going forward, much less replace the Collateral that has eroded since these Chapter 11 Cases were filed.

13. If the Debtors will not agree to an orderly wind-down in chapter 11, disposition of their assets and prosecution of claims can also be accomplished by a chapter 7 trustee. As soon as possible following conversion of these Chapter 11 Cases to chapter 7, Lender would try to negotiate consensual Cash Collateral use with a chapter 7 trustee to enable the chapter 7 trustee to monetize the Debtors' remaining inventory and claims. The Lender believes appointment of a chapter 11 trustee is more likely to net higher overall returns for creditors than conversion to chapter 7, but even conversion of these Cases is better for creditors than allowing the Debtors to proceed as they have to date.

**SUMMARY OF RELIEF SOUGHT AND RESERVATION OF RIGHTS**

14. Lender hereby (a) makes a demand for adequate protection of its interests in all Cash Collateral and other Collateral that Debtors propose to use after the Termination Date of the Final Cash Collateral Order, (b) objects to the Emergency Motion, and (c) in the absence of Lender's consent to the Debtors' continued use of Cash Collateral, moves to appoint a chapter 11 trustee or convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Lender

reserves its rights to file additional responses, affidavits and exhibits, and identify additional factual and legal support, in support of the foregoing.

Dated: April 2, 2025
      Dallas, Texas

Respectfully Submitted,

By: */s/ Christopher A. Bailey*
Brent R. McIlwain
Christopher A. Bailey
HOLLAND & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9481
brent.mcilwain@hklaw.com
chris.bailey@hklaw.com

- and -

Jeremy M. Downs
Steven J. Wickman
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(312) 201-4000
jeremy.downs@goldbergkohn.com
steven.wickman@goldbergkohn.com

*Counsel to Fifth Third Bank, National Association*

## CERTIFICATE OF CONFERENCE

  I, Jeremy M. Downs, have corresponded with counsel for the Debtors via Zoom and email regarding the Lender's potential request for the conversion of these cases to chapter 7.  To the best of my knowledge, the Debtors oppose such relief.

            */s/ Jeremy M. Downs*
            Jeremy M. Downs

## CERTIFICATE OF SERVICE

  The undersigned certifies that, on April 2, 2025, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) System on all parties registered to receive electronic notice in this case.

               */s/ Brent R. McIlwain*
               Brent R. McIlwain