Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Mary Rofaeil (TX 24119467)
Zachary C. Zahn (TX 24137675)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
sajones@foley.com
mary.rofaeil@foley.com
zzahn@foley.com

Ann Marie Uetz (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800
auetz@foley.com

Michael J. Small (*pro hac vice*)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
msmall@foley.com

**COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| Stoli Group (USA), LLC, *et al.*,[1] | § § § | Case No.: 24-80146-swe-11 |
| Debtors. | § § § § | (Jointly Administered) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE DEBTORS TO CONTINUE USE OF CASH
## COLLATERAL AND (II) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested no later than 9:30 a.m. (CT) on April 29, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing or file a written response by no later than 12:00 p.m. (CT) on April 28, 2025. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are Stoli Group (USA), LLC (5602) and Kentucky Owl, LLC (3826). The Debtors' address is 135 East 57th Street, 9th Floor, New York City, New York.

> **A hearing will be conducted on this matter on April 29, 2025, at 9:30 a.m. (CT) in Courtroom 3, floor 14, 1100 Commerce Street, Dallas, TX 75242 before the Honorable Scott W. Everett, U.S. Bankruptcy Judge for the Northern District of Texas.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-650-479-3207. Video communication will be by use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Everett's home page. The meeting code is 2304 017 9738. Click the settings icon in the upper right corner and enter your name under the personal information setting. A copy of Judge Everett's WebEx Hearing Instructions can be found at the following link: WebEx Hearing Instructions.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Everett's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Stoli Group (USA), LLC ("**Stoli USA**") and Kentucky Owl, LLC ("**KO**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Continue Use of Cash Collateral and (II) Granting Related Relief* (the "**Motion**").[2] In support of the Motion, the Debtors respectfully state as follows:

---

[2] For the avoidance of doubt, the Second Stipulation and Agreed Order (as defined below) requires the Debtors to file this Motion to seek further use of the Lender's Cash Collateral by not later than April 18, 2025. [*See* Docket No. 339, at ¶ 11]. Accordingly, the filing of this Motion by the Debtors does not trigger a Termination Date under paragraph 6 of the Final Order (as defined below) or otherwise affect the Debtors' ability to use Cash Collateral through April 30, 2025, in accordance with the Final Order or the Second Stipulation and Agreed Order. [*See* Docket No. 188, at ¶ 6].

## I.
## PRELIMINARY STATEMENT

1.      Via this Motion, the Debtors seek the Court's approval and entry of a Proposed

Order, which contemplates (1) further extending the Debtors' use of the Lender's Cash Collateral

through June 30, 2025 in accordance with the terms of the Final Order, and (2) modifying certain

other terms and provisions of the Final Order. The relief requested in this Motion and Proposed

Order is necessary to provide the Debtors with additional time to undertake the plan of

reorganization process and implement the Debtors' strategic objectives to exit chapter 11.

Accordingly, the Debtors submit that ample cause exists for the Court to approve and enter the

Proposed Order on an emergency basis.

## II.
## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Northern District of Texas (the

"**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent,

pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 361, 362, and 363 of

title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and

Bankruptcy Rules 4001 and 9014.

## III.
## BACKGROUND

**A.      The Chapter 11 Cases**

5.       On November 27, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating the Chapter 11 Cases and creating their respective bankruptcy estates (the "**Estates**"). The Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed on December 23, 2024 (the "**Committee**"). [*See* Docket No. 93].

6.       Information on the Debtors and their businesses can be found in the *Declaration of Chris Caldwell in Support of First Day Motions* [Docket No. 11] (the "**First Day Declaration**"), incorporated herein by reference.

**B.      Use of Cash Collateral**

7.       On November 29, 2024, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 10] (the "**Cash Collateral Motion**").[3]

8.       As explained in the Cash Collateral Motion and First Day Declaration, prior to the Petition Date, the Debtors entered into various Prepetition Loan Documents via which the Debtors' secured lender, Fifth Third Bank, National Association (the "**Lender**"), provided the Debtors with separate senior secured revolving credit facilities that the Debtors used to fund their operations in accordance with certain Prepetition Loan Documents. The amounts owed to the

---

[3] Additional details and background information can be found in the Cash Collateral Motion, which is incorporated herein by reference.

4

Lender under the Prepetition Loan Documents are secured by a first-priority lien on substantially all of the Debtors' assets, respectively.

9.      On December 3, 2024, the Court conducted an interim hearing regarding the Cash Collateral Motion and the relief requested therein (the "**First Interim Hearing**"). Following the First Interim Hearing, the Court entered the *Interim Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 38] (the "**First Interim Order**").

10.      On December 30, 2024, the Court conducted a second interim hearing regarding the Cash Collateral Motion and the relief requested therein (the "**Second Interim Hearing**"). Following the Second Interim Hearing, the Court entered the *Second Interim Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 124] (the "**Second Interim Order**").

11.      On January 17, 2025, the Court conducted a final hearing regarding the Cash Collateral Motion and the relief requested therein (the "**First Final Hearing**"). Following the Final Hearing, the Court entered the *Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 188] (the "**Final Order**).[4]

## C.      Terms of the Final Order

12.      Under the Final Order, the Court authorized the Debtors to use the Lender's Cash Collateral, subject to and in compliance with various terms and provisions outlined and detailed in the Final Order, including a Budget agreed to by the Debtors and the Lender and approved by the Court. [*See* Docket No. 188, at ¶ 4].

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Final Order.

13.    The Final Order also required the Debtors to (a) provide the Lender and the Committee with certain mandatory weekly and monthly reporting and (b) comply with reasonable information requests made by the Lender. [*See* Docket No. 188, at ¶ 7].

14.    Additionally, the Final Order provided the Lender with various forms of Adequate Protection, including Replacement Liens, Super-Priority Claims, monthly payment of non-default rate interest under each of the Debtors' prepetition credit facilities with the Lender, and monthly payment of the Lender's Professionals Fees and Expenses up to an aggregate monthly amount not to exceed $250,000. [*See* Docket No. 188, at ¶ 8].

**D.    Motions, Stipulations, and Agreed Orders Regarding Further Cash Collateral Use and Extension of the Debtors' Exclusivity Periods**

15.    On March 6, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Modifying the Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association and (II) Granting Related Relief* [Docket No. 273] (the "**Second Cash Collateral Motion**"), thereby seeking to modify certain terms and conditions contained in the Final Order.

16.    On March 7, 2025, the Court held a hearing on the First Cash Collateral Motion (the "**First Hearing**"). At the First Hearing, (1) the Court heard the statements and arguments in support of and in opposition to the relief requested in the Second Cash Collateral Motion, and (2) counsel for the Debtors, the Lender, and the Committee announced an agreement regarding the Second Cash Collateral Motion and certain modifications to the Final Order. Thereafter, on March 12, 2025, the Court entered the *Stipulation and Agreed Order Regarding the Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 291] (the "**First Stipulation and Agreed Order**").

6

17. Under the First Stipulation and Agreed Order, the Debtors were required to comply with certain terms and conditions in order to continue using the Lender's Cash Collateral, including (a) remitting a $250,000 payment to the Lender for the Lender's Professional Fees and Expenses by no later than March 7, 2025 (the "**Lender Fee Requirement**") and (b) making a certain Production Payment Allocation Payment, whereby the Debtors were permitted to continue making production payments to certain of their affiliates, provided that the Debtors also made certain corresponding adequate protection payments to the Lender (the "**Production Payment Requirement**"). [*See* Docket No. 291, at ¶ 2]. All other terms and provisions of the Final Order remained in place and were unchanged by the First Stipulation and Agreed Order. [*See* Docket No. 291, at ¶ 4].[5]

18. Following the Court's entry of the First Stipulation and Agreed Order, the Debtors fully adhered to and complied with all of the terms and provisions of the Final Order, as modified by the First Stipulation and Agreed Order, including the Lender Fee Requirement and Production Payment Requirement.

19. On March 5, 2025, the Debtors filed the *Debtors' Motion to Extend the Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 266] (the "**Exclusivity Motion**"), thereby seeking to extend the Debtors the Filing Exclusivity Period and the Solicitation Exclusivity Period through and including June 25, 2025, and August 24, 2025, respectively.[6]

20. On March 28, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Continue Use of Cash Collateral and (II) Granting*

---

[5] Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the First Stipulation and Agreed Order.

[6] Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the Exclusivity Motion.

*Related Relief* [Docket No. 303] (the "**Third Cash Collateral Motion**"), thereby seeking to extend the Debtors' use of the Lender's Cash Collateral Order through May 31, 2025, in accordance with a new proposed budget and otherwise in accordance with the terms and conditions of the Final Order.

21.     On April 1, 2025, and April 2, 2025, the Court held an evidentiary hearing on the Exclusivity Motion and the Third Cash Collateral Motion (the "**Second Hearing**"). At the Second Hearing, (1) the Court heard statements, arguments, and evidence in support of and in opposition to the relief requested in the Exclusivity Motion, Third Cash Collateral Motion, and other related matters, and (2) counsel for the Debtors, the Lender, and the Committee announced an agreement regarding the Exclusivity Motion and the Third Cash Collateral Motion. Thereafter, on April 4, 2025, the Court entered the *Second Stipulation and Agreed Order Regarding the Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 339] (the "**Second Stipulation and Agreed Order**") and the *Stipulation and Agreed Order Regarding the Debtors' Motion to Extend the Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 340] (the "**Exclusivity Stipulation and Agreed Order**").

22.     Under the Second Stipulation and Agreed Order, the Debtors were authorized to continue using the Lender's Cash Collateral through April 30, 2025, in accordance with the terms of the Final Order, provided that the Debtors comply with certain other terms and conditions reflected in the Second Stipulation and Agreed Order, including, among other things, (1) the Debtors operate in accordance with a new budget through April 30, 2025, with respect to their use of the Lender's Cash Collateral (the "**Budget Requirement**"); (2) the Debtors remit certain adequate protection payments to the Lender in connection with the amounts owed by the

8

Debtors to the Lender under the Prepetition Loan Documents by no later than April 9, 2025 (the "**Adequate Protection Payment Requirement**"); (3) the Debtors deposit $474,843 into the bank account of Debtor Kentucky Owl at the Lender by no later than April 9, 2025 (the "**Professional Fee Allocation Requirement**"); (4) the Debtors pay the accrued professional fees and expenses incurred by estate professionals in the amount of $2,793,000 in accordance with the terms of the new budget, and by no later than April 29, 2025 (the "**Professional Fee Payment Requirement**"); (5) the Debtors receive a cash payment in the amount of $1,000,000 from or on behalf of the Debtors' ultimate equity owner by no later than April 9, 2025 (the "**Owner Payment Requirement**"); (6) Debtor Stoli USA receive a cash reimbursement from its non-debtor affiliate, Louisiana Spirits LLC ("**LAS**"), for funds LAS received postpetition from Debtor Stoli USA on account of finished "Maighstir" bourbon by no later than April 14, 2025 (the "**Maighstir Funds Requirement**"); (7) Debtor Stoli USA receive new shipments of inventory (and to take title to such inventory) from its non-debtor affiliate, SPI Spirits (Cyprus) Limited ("**SPI**") in the amounts, at the locations and during the weeks as projected in the schedule, designated as the "**On the Water Schedule**," which was confidentially delivered by the Debtors to the Lender and the Committee on April 2, 2025 (the "**New Inventory Requirement**"); and (8) the Debtors' Chief Restructuring Officer deliver a certified statement to the Lender and Committee on Friday of each week regarding the amounts of such inventory received and the status of the Debtors' compliance with the On the Water Schedule with respect to the prior week ended Friday (the "**On the Water Requirement**"). [*See* Docket No. 339, at ¶¶ 1–3, 5–6]. [7] All other terms and provisions of the Final Order remained in place and were unchanged by the Second Stipulation and Agreed Order.

---

[7] Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the Second Stipulation and Agreed Order.

23.     Pursuant to the Exclusivity Stipulation and Agreed Order, (1) the Filing

Exclusivity Period for Debtor Stoli USA was extended through and including April 29, 2025,

and the Solicitation Exclusivity Period for Debtor Stoli USA is extended through and including

June 28, 2025; and (2) the Filing Exclusivity Period and the Solicitation Exclusivity Period for

Debtor KO was terminated as of April 1, 2025. [*See* Docket No. 340, at ¶ 1].[8]

24.     Following the Court's entry of the Second Stipulation and Agreed Order, the

Debtors fully adhered to and complied with all of the terms and provisions of the Final Order, as

modified by the Second Stipulation and Agreed Order, including the Budget Requirement,

Adequate Protection Payment Requirement, Professional Fee Allocation Requirement,

Professional Fee Payment Requirement, Owner Payment Requirement, Maighstir Funds

Requirement, New Inventory Requirement, and On the Water Requirement.

25.     In accordance with the First Interim Order, Second Interim Order, Final Order,

First Stipulation and Agreed Order, and Second Stipulation and Agreed Order (collectively, the

"**Cash Collateral Orders**"), the Debtors have funded their continued operations in the Chapter

11 Cases utilizing the Lender's Cash Collateral subject to the terms, conditions, and restrictions

imposed by the Cash Collateral Orders.

**IV.**
**RELIEF REQUESTED**

26.     Via this Motion, the Debtors request that the Court enter the proposed order,

substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), allowing the

Debtors to continue using the Lender's Cash Collateral through June 30, 2025 in accordance

---

[8] Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them
in the Exclusivity Stipulation and Agreed Order. Concurrently with the filing of this Motion, the Debtors filed the
*Emergency Motion to Further Extend the Exclusive Period for Stoli Group (USA), LLC to File a Chapter 11 Plan
and Solicit Acceptances Thereof*, seeking to extend Debtor Stoli USA's Filing Exclusivity Period and Solicitation
Exclusivity Period through and including May 31, 2025, and July 30, 2025, respectively.

with a new proposed budget attached to the Proposed Order (the "**Budget**").[9] The Proposed

Order contemplates that all terms and provisions in the Final Order will continue to govern the

Debtors' use of Cash Collateral, unless any such terms and provisions are modified by the

Proposed Order. The Debtors continue to confer and negotiate with counsel for the Lender and

the Committee regarding the terms and provisions of the Proposed Order in an effort to reach an

agreement regarding the Debtors' continued use of Cash Collateral prior to the hearing on this

Motion.

**V.**
**BASIS FOR RELIEF**

**A.      Emergency relief is necessary and warranted under the circumstances.**

27.      The Debtors bring this Motion on an emergency basis and seek entry of the

Proposed Order, which, among other things, extends the Debtors' use of Cash Collateral through

June 30, 2025. Notably, following the Court's entry and the First Stipulation and Agreed Order

and Second Stipulation and Agreed Order (collectively, the "**Stipulations and Agreed Orders**",

the Debtors have adhered to and fully complied with all requirements under the Final Order and

the Stipulations and Agreed Orders, including the Lender Fee Requirement, Production Payment

Requirement, Budget Requirement, Adequate Protection Payment Requirement, Professional Fee

Allocation Requirement, Professional Fee Payment Requirement, Owner Payment Requirement,

Maighstir Funds Requirement, New Inventory Requirement, and On the Water Requirement.

28.      Additionally, the Debtors have been engaged in ongoing negotiations and

discussions with the Lender and the Committee to reach an agreement regarding the Debtors'

continued use of Cash Collateral and the terms of the Debtors proposed plan of reorganization—

as of the time of filing this Motion, those negotiations and discussions are still ongoing. The

---

[9] The Debtors will file their proposed Budget in advance of the hearing on this Motion.

Debtors' continued ability to use Cash Collateral is necessary to sustain ongoing business

operations, preserve the value of their assets for the benefit of the Debtors' Estates, and

implement the Debtors' restructuring objectives. Absent the continued use of Cash Collateral, the

Debtors would likely have to cease their ongoing operations to the material detriment of their

employees, creditors, stakeholders, and other parties in interest. Therefore, the Debtors need to

ensure the availability of such working capital now and submit that cause exists for the Court to

hear and consider the Motion on an emergency basis.

**B.      The Debtors' proposed Adequate Protection for the use of Cash Collateral is sufficient.**

29.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may

not use cash collateral without the consent of the Lender or court approval. *See* 11 U.S.C. §

363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon the request of an entity

with an interest in property to be used by the debtor, the court shall prohibit or condition such

use as necessary to provide adequate protection of that interest. *See* 11 U.S.C. § 363(e).

30.     The Bankruptcy Code does not expressly define "adequate protection" or

proscribe a particular form that it must take. *See In re Las Torres Dev., L.L.C.,* 413 B.R. 687,

696–97 (Bankr. S.D. Tex. 2009) (noting that the Bankruptcy Code "contains no specific,

definitive definition of adequate protection") (citing *In re First S. Sav. Ass'n*, 820 F.2d 700, 710

(5th Cir. 1987)). However, section 361 of the Bankruptcy Code provides a non-exhaustive of

potential forms that adequate protection can take, such as "requiring the debtor in possession to

make a cash payment or periodic cash payments, provide additional or replacement liens, or []

such other relief as will result in the creditor's realization of the indubitable equivalent of the

creditor's interest in the property." *In re Energy Oilfield Servs., LLC*, No. 15-35003-H3-11, 2015

WL 6667458, at *2 (Bankr. S.D. Tex. Oct. 30, 2015) (citing 11 U.S.C. § 361).

31.     It is well recognized that that "[i]n order to encourage reorganization, courts must be flexible in applying the adequate protection standard, which 'flexibility, however, must not operate to the detriment of the secured creditor's interest,' and 'depends on the nature of the collateral and the nature of the debtor's proposed use of that collateral.'" *In re TeVoortwis Dairy, LLC*, 605 B.R. 833, 839 (Bankr. E.D. Mich. 2019) (quoting *Martin v. U.S. Commodity Credit Corp. (In re Martin)*, 761 F.2d 472, 477 (8th Cir. 1985)). And generally, courts decide what constitutes adequate protection on a case-by-case basis. *See In re First S. Sav. Ass'n*, 820 F.2d at 710 (noting, with respect to adequate protection, that "'[i]ts application is left to the vagaries of each case'") (quoting *In re Becker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)); *Resolution Tr. Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.") (citing *In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987)); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate protection is a fact specific inquiry."). The focus of the adequate protection requirement is to protect a "secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection . . . is to safeguard the secured creditor from diminution in the value of its interests"); *In re Beker*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the focus of adequate protection "is protection of the secure creditor from diminution in the value of its collateral during the reorganization process").

32.     As adequate protection for the Debtors' use of the Lender's Cash Collateral, the Debtors propose to continue providing the Lender with adequate protection on substantially the

same terms reflected in the Final Order, including Replacement Liens, Super-Priority Claims, payment of non-default rate interest, and payment of the Lender's Professionals Fees and Expenses. [*See* Docket No. 188, at ¶ 8] (collectively, the "**Adequate Protection**").

33.     The Debtors submit that the proposed Adequate Protection, outlined above and as set forth in the Final Order, is sufficient to secure the Lender for the Debtors' projected use of Cash Collateral because the projected diminution in value, if any, from the Debtors' use of Cash Collateral is less than the value of the Adequate Protection proposed to the Lender. Moreover, the use of Cash Collateral is itself a form of adequate protection, as it preserves or even increases the value of the Debtors' overall going-concern value by allowing them to operate during the restructuring process. *See, e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. at 631 (noting that, in determining whether protection is "adequate," courts consider "whether the value of the debtor's property will increase as a result of the" use of collateral or provision of financing) (citing *Bank of New England v. BWL, Inc.,* 121 B.R. 413, 418 (D. ME. 1990)). Accordingly, the Debtors submit that the proposed Adequate Protection is appropriate and should be approved.

**C.     The Debtors' use of Cash Collateral is necessary to preserve the assets of the Estates.**

34.     As they did at the beginning of these Chapter 11 Cases, the Debtors continue to require access to liquidity to ensure that they can continue operating during these Chapter 11 Cases and preserve the value of their Estates for the benefit of all parties-in-interest. And as of the Petition Date, substantially all of the Debtors' total cash on hand was and remains subject to the liens of the Lender and thus constitutes Cash Collateral.

35.     At this juncture, the Debtors continue to incur expenses associated with managing their ongoing operations, collecting receivables, and administering their Estates during the course of these Chapter 11 Cases. And it goes without saying that it is essential for the Debtors

to continue funding their ongoing operating expenses, payroll obligations, insurance expenses, and other obligations.

36.     The Debtors' ability to utilize Cash Collateral subject to the terms of the Final Order, as modified by the Proposed Order, will allow the continuation of the Debtors' existing operations and relationships with vendors, customers, employees, and other stakeholders at this critical stage of their restructuring. Relatedly, the Debtors' continued use of Cash Collateral in accordance with the terms and provisions of the Final Order, as modified by the Proposed Order, is essential to the Debtors' ability to minimize disruptions and avoid irreparable harm to their business. Accordingly, the Debtors submit that the Court should grant the Motion and permit the Debtors to continue using the Lender's Cash Collateral in accordance with the terms of the Proposed Order and Final Order, as applicable.

**D.     The automatic stay should be modified to a limited extent in order to effectuate the relief requested via this Motion.**

37.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtors and the Lender to perform the transactions and actions contemplated or permitted by the Proposed Order. The stay relief provisions are a reasonable exercise of the Debtors' business judgment, are appropriate under the present circumstances, and, accordingly, should be approved.

**E.     Final relief is necessary and warranted under the present circumstances.**

38.     The Debtors have an immediate need for access to liquidity to, among other things, permit the orderly continuation of the operation of their business, and to satisfy other working capital and operation needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest. The alternative is "to force the debtor to close down their operations and thus doom any effort at reorganization, which will

hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case." *In re Dynaco Corp.*, 162 B.R. 389, 396 (Bankr. D.N.H. 1993) (alteration in original). This result would be fundamentally at odds with the rehabilitative purposes of chapter 11, and therefore, approval of this Motion is warranted. *Id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

39.    As the Court is aware, the Debtors obtained final relief regarding their use of Cash Collateral, and via this Motion, the Debtors seek to extend the term of their use of Cash Collateral in accordance with the terms of the Proposed Order, which modifies and extends the Proposed Order. Such authorization will ensure the Debtors maintain ongoing operations and avoid immediate and irreparable harm and prejudice to their Estates and all parties in interest. And the Debtors submit that, for the reasons set forth herein, the immediate use of Cash Collateral, as requested in this Motion, is necessary to avert immediate and irreparable harm to the Debtors' businesses and their Estates. Accordingly, for all of the reasons set forth above, prompt entry of the Proposed Order is necessary to avert immediate and irreparable harm to the Debtors' Estates, is consistent with and warranted under the Bankruptcy Code and Bankruptcy Rules, and is therefore in the best interest of the Debtors, their Estates, their creditors, and all parties in interest.

**VI.**
**REQUESTS FOR BANKRUPTCY RULES 4001 AND 6004 WAIVERS**

40.    The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rules 4001(a)(3) and 6004(h). The Debtors submit that ample cause exists to justify the waiver

of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by

Bankruptcy Rules 4001(a)(3) and 6004(h), to the extent such stay applies.

## VII.
## NOTICE

41.    No trustee, examiner, or statutory creditors' committee has been appointed in

these Chapter 11 Cases. This Motion has been provided to (i) the Office of the United States

Trustee for the Northern District of Texas; (ii) the Debtors' secured lender and counsel to the

Debtors' secured lender; (iii) the Committee and counsel for the Committee; (iv) the holders of

the 30 largest unsecured claims against the Debtors (on a consolidated basis); (v) the Internal

Revenue Service; and (vi) all parties in interest who have formally appeared and requested

notice. The Debtors respectfully submit that no further notice of this Motion is required.

42.    The pleadings in these Chapter 11 Cases and supporting papers are available on

the Debtors' website at https://cases.stretto.com/Stoli or on the Bankruptcy Court's website at

https://ecf.txnb.uscourts.gov/. You can request any pleading you need from (i) the noticing agent

at: Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, 855-469-2598 (toll-free),

(TeamStoli@stretto.com) or (ii) counsel for the Debtors at: Foley & Lardner LLP, c/o Stephen

A. Jones, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (sajones@foley.com).

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court

grant the Motion, enter the Proposed Order, substantially in the form attached hereto as

**Exhibit A**, and grant the Debtors such other and further relief as this Court may deem just and

proper under the circumstances.

[*Signature Page to Follow*]

17

DATED: April 18, 2025

Respectfully submitted by:

*/s/ Holland N. O'Neil*
Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Mary Rofaeil (TX 24119467)
Zachary C. Zahn (TX 24137675)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
sajones@foley.com
mary.rofaeil@foley.com
zzahn@foley.com

-and-

Ann Marie Uetz (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800
auetz@foley.com

-and-

Michael J. Small (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
msmall@foley.com

**COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

/s/ *Stephen A. Jones*
Stephen A. Jones