```
                    IN THE UNITED STATES BANKRUPTCY COURT
1                    FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION
2
                                   )   Case No. 24-80146-swe-11
3    In Re:                        )
                                   )   Dallas, Texas
4    STOLI GROUP (USA) LLC,        )   June 24, 2025
     et al.,                       )   9:30 a.m.
5                                  )
            Debtors.               )   - MOTION TO EXTEND EXCLUSIVITY
6                                  )     PERIOD (365)
                                   )   - MOTION FOR CONDITIONAL
7                                  )     APPROVAL OF DISCLOSURE
                                   )     STATEMENT (409)
8    _____)

9                        TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE SCOTT W. EVERETT,
10                   UNITED STATES BANKRUPTCY JUDGE.

11   APPEARANCES:

12   For the Debtors:              Holland N. O'Neil
                                   Stephen Austin Jones
13                                 FOLEY & LARDNER, LLP
                                   2021 McKinney Avenue, Suite 1600
14                                 Dallas, TX  75201
                                   (214) 999-4000
15
     For Fifth Third Bank:         Brent R. McIlwain
16                                 HOLLAND & KNIGHT, LLP
                                   One Arts Plaza
17                                 1722 Routh Street, Suite 1500
                                   Dallas, TX  75201
18                                 (214) 964-9481

19   For Fifth Third Bank:         Jeremy M. Downs
                                   GOLDBERG KOHN LTD.
20                                 55 East Monroe Street, Suite 3300
                                   Chicago, IL  60603
21                                 (312) 201-4000

22   For the Creditors'           John J. Kane
     Committee:                    KANE RUSSELL COLEMAN LOGAN, P.C.
23                                 901 Main Street, Suite 5200
                                   Dallas, TX  75202
24                                 (214) 777-4261

25
```

```
 1   APPEARANCES, cont'd.:

 2   For the Creditors'          Tristan G. Axelrod
     Committee:                  BROWN RUDNICK, LLP
 3                               One Financial Center
                                 Boston, MA  02111
 4                               (617) 856-8200

 5   For the Creditors'          Jeffrey L. Jonas
     Committee:                  BROWN RUDNICK, LLP
 6                               7 Times Square
                                 New York, NY  10036
 7                               (212) 209-4800

 8   For the U.S. Trustee:       Asher M. Bublick
                                 OFFICE OF THE UNITED STATES
 9                                  TRUSTEE
                                 1100 Commerce Street, Room 976
10                               Dallas, TX  75242
                                 (214) 767-1079
11
     For the Bardstown Bourbon   Rob Jacobson
12   Company:                    KIRKLAND & ELLIS, LLP
                                 333 West Wolf Point Plaza
13                               Chicago, IL  60654
                                 (312) 862-4114
14
     For the Bardstown Bourbon   Matthew Fagen
15   Company:                    KIRKLAND & ELLIS, LLP
                                 601 Lexington Avenue
16                               New York, NY  10022
                                 (212) 446-5977
17
     ALSO IN ATTENDANCE:
18
     For SPI Spirits, Plan       Bruce Thompson
19   Sponsor:

20   Recorded by:                Sara Ferrufino
                                 UNITED STATES BANKRUPTCY COURT
21                               1100 Commerce Street, 12th Floor
                                 Dallas, TX  75242
22                               (214) 753-2088

23

24

25
```

1  Transcribed by:              Kathy Rehling
2                               311 Paradise Cove
                                Shady Shores, TX   76208
3                               (972) 786-3063
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25        Proceedings recorded by electronic sound recording;
           transcript produced by transcription service.

1              DALLAS, TEXAS - JUNE 24, 2025 - 9:32 A.M.

2              THE CLERK:  All rise.

3              THE COURT:  Good morning.  Please be seated.

4       All right.  Good morning.  We're here on the 9:30 docket.

5  We have a couple matters set in the Stoli Group case, 24-

6  80146.  I'll go ahead and start with appearances in the

7  courtroom.

8              MS. O'NEIL:  Good morning, Your Honor.  Holly O'Neil

9  and Stephen Jones on behalf of the Debtors.  Also in the

10  courtroom is Mr. Alexey Olinik with SPI.  On the WebEx, I

11  believe, I can see our chief restructuring officer, Mr. Steve

12  Wybo, as well as Harve Light, who is with Riveron, who is our

13  financial advisor.  Thank you.

14              THE COURT:  All right.  Good morning.

15              MS. O'NEIL:  Good morning.

16              MR. MCILWAIN:  Good morning, Your Honor.  Brent

17  McIlwain from Holland & Knight here for Fifth Third Bank.

18              THE COURT:  Good morning.

19              MR. KANE:  Good morning, Your Honor.  John Kane on

20  behalf of the Committee.  And with me in the virtual courtroom

21  is Jeff Jonas and Tristan Axelrod.  Thank you.

22              THE COURT:  Good morning.

23              MR. BUBLICK:  Good morning, Your Honor.  Asher

24  Bublick for the United States Trustee.

25              THE COURT:  Good morning.  All right.  I'll take

1   WebEx appearances.

2          MR. DOWNS:  Good morning, Your Honor.  Jeremy Downs

3   from Goldberg Kohn.  Mr. McIlwain is leading for us today, but

4   I am available.

5          THE COURT:  All right.  Thank you.

6          MR. THOMPSON:  Good morning, Your Honor.  Bruce

7   Thompson on behalf of SPI Spirits, the Plan Sponsor.

8          THE COURT:  All right.  Welcome back.

9          MR. JACOBSON:  Good morning, Your Honor.  Rob

10  Jacobson from Kirkland & Ellis on behalf of the Bardstown

11  Bourbon Company.

12         THE COURT:  Good morning.

13         MR. JONAS:  Good morning, Your Honor.  Jeff Jonas and

14  Tristan Axelrod.  I know Mr. Kane announced us.  I just wanted

15  to say good morning.  From Brown Rudnick for the Committee.

16         THE COURT:  All right.  Good morning.

17      All right.  Last call for appearances.

18      All right.  We have two motions set.  Before we get to

19  those, I just want to do a quick announcement.  I do this

20  every year during law clerk hiring season.  One of my law

21  clerks, Mr. Walsh, has been walled off from this case for a

22  couple weeks.  There are ethics opinions for judges on when

23  you have to wall your law clerks off as they're out beating

24  the bushes, trying to find their next job.  And the bright

25  line rule is once they accept an employment position with a

1   firm, that's the latest you should wall them off.  I'm more

2   conservative than that, and so for my law clerks I've had the

3   standard operating procedure since I took the bench that, once

4   they accept a formal interview with a firm, I wall them off

5   from the matters that are pending before the Court that that

6   firm is working on.

7       So Mr. Walsh, I think, was invited for an interview at the

8   Foley & Lardner firm a couple weeks ago, so since that time he

9   has not been in the courtroom and has not participated in this

10  case.  And I understand recently accepted a position with that

11  firm, and so he will continue to be walled off.  So I wished

12  him congratulations, but I think it's appropriate for me to

13  announce that on the record, and I do this in all my cases

14  where my law clerks find their next landing spot.

15      So, with that all said, I'll turn it over to the Debtors.

16          MS. O'NEIL:  Thank you, Your Honor.  I'm not sure if

17  it's appropriate or not, but I would say we're very excited

18  that Mr. Walsh will be joining us.

19          THE COURT:  All right.

20          MS. O'NEIL:  Your Honor, Holly O'Neil on behalf of

21  the Debtors.

22      Your Honor, we're here today on two matters:  conditional

23  approval of the disclosure statement and the motion to extend

24  exclusivity.

25      Your Honor, we basically have an agreement with the

1    parties, which is probably why you see fewer of us in the

2    courtroom today than has been.  And the agreement is going to

3    facilitate getting the plan, the amended plan, which

4    incorporates predominantly the agreement with the Creditors'

5    Committee.  That was pretty much the bulk of the amendments to

6    the plan, was to reflect the term sheet that had been

7    previously filed and had been negotiated and agreed to with

8    the Creditors Committee for the treatment of the general

9    unsecured creditors.

10       Again, Your Honor, this is a full-pay plan.  So we are

11   anxious to get the process moving for solicitation and get the

12   plan out for voting, if you will.

13       Your Honor, that doesn't mean we're resolved with

14   everyone.  We continue to negotiate with the Bank and certain

15   other creditors, including Bardstown.  And I'm sure those

16   parties will state their position in terms of reservation of

17   rights and things of this nature as we proceed forward towards

18   confirmation.

19       Your Honor, we have vetted the schedule that gets us from

20   here to a confirmation hearing on or about July 21st.  That

21   schedule has been vetted with the parties, and we've

22   incorporated and kind of taken in everyone's comments, and

23   recirculated.  And I think we've landed on the schedule,

24   subject to the Court's availability.

25       Mr. McIlwain or Mr. Downs will comment that one -- which

1    is reflected in the order, that to the extent potential

2    discovery that they may need is not concluded, there may need

3    to be a push or an extension on the confirmation hearing.

4    We're hoping that won't be necessary.  We haven't seen the

5    discovery they want to tender.  So, kind of we don't know at

6    this point what we'll -- we intend to move at all deliberate

7    speed to get any necessary confirmation discovery completed so

8    that we can meet this timeline.

9         And what we have proposed, which is reflected in the

10   order, that between now and -- we have another hearing on July

11   2nd, which is the next cash collateral hearing, which is next

12   week -- that we would try to get to a resolution, either a

13   global resolution or at least a resolution on that discovery

14   schedule, and we would present that on July 2nd at that

15   hearing.  Or if we can't quite get there, then we would

16   present what we have come up with and where we diverge to the

17   Court, and then the Court would facilitate resolving that

18   discovery schedule at that hearing on July the 2nd.

19        So that's where we are.  We've also got -- the parties

20   have agreed to the extension of exclusivity, if you will.

21   We've obviously already filed a plan, but that the plan

22   exclusivity vis-à-vis Stoli USA would extend until June 30th,

23   and then the solicitation period would be another 60 days

24   after that.

25        However, obviously, we're starting the process and hope to

1    conclude with a confirmation hearing, again, on or about July

2    21st.

3        Your Honor, we did check with your setting clerk, and that

4    date, and then potentially a rollover to the 23rd, thank you,

5    I think the Court might have been tied up on the 22nd with

6    other matters, but so we -- at least the game plan would be to

7    commence the confirmation hearing on the 21st, and a potential

8    rollover to the 23rd, again, subject to this issue on what

9    discovery is required or requested by the Bank, and the timing

10   on getting that completed.

11       With that, Your Honor, I was going to turn the podium over

12   to Mr. Jones to present, to go through with the Court the

13   order that's been agreed to as well as to walk through the

14   exhibits, which are the ballots that have been, again,

15   circulated.  We've gathered comments from the parties to the

16   form of the ballots, et cetera.  And also then to just

17   formally present on the exclusivity motion.

18           THE COURT:  All right.  And before I forget, this

19   shouldn't affect your confirmation schedule, but just to let

20   you know I did manage to squeeze in, I hope, a vacation from

21   July 3rd to the 11th.  We're going to be on the road to

22   Colorado on the 3rd, back on the road probably on the 11th.

23   And so I'll be available if there's an emergency, I can handle

24   those remotely, depending on what it is, but at least that's

25   when I plan to be out of the office.

1          MS. O'NEIL:  Thank, Your Honor.

2          THE COURT:  All right.

3          MS. O'NEILL:  I think your staff has been trying to

4    be very protective of that.  So hopefully we would not need to

5    infringe on that.  So, hopefully, any issues that we can

6    potentially resolve by the 2nd, the hearing we have on the

7    2nd, before you head off to vacation.

8          THE COURT:  All right.  Very good.  Thank you.

9          MS. O'NEIL:  Thank you.

10          MR. JONES:  Good morning, Your Honor.  Stephen Jones

11   on behalf of the Debtors, Foley & Lardner.  As Ms. O'Neil

12   mentioned and as the Court referenced, we do have two matters

13   that are set for this morning.  I'll be referring to the

14   agenda that we filed yesterday evening at Docket No. 569.

15   I'll also be referring to the amended witness and exhibit list

16   that we filed immediately before that at No. 568.

17       The first matter listed as Item A in the agenda was the

18   exclusivity extension motion that we filed with respect to

19   Debtor, Stoli USA.  As the Court may recall, we entered into a

20   stipulation and agreed order where the exclusivity period for

21   Kentucky Owl, LLC, the other Debtor, has since expired.  So

22   this motion, just to be clear, relates solely to Stoli USA.

23       We filed this motion back in April, April 18th of 2025, to

24   be specific, at Docket No. 338.  Through various stipulations

25   and agreed orders that the Court may recall that have been

1    entered with respect to cash collateral, this motion has been

2    being carried and continued.  And pursuant to the Complex Case

3    Procedures, there's been an automatic bridge order kind of

4    carrying the motion through until the Court rules on it.

5        We did have two objections that were initially filed with

6    respect to this motion.  Those were filed by the Committee and

7    by Fifth Third Bank at Docket No. 433 and 509.

8        As Ms. O'Neil mentioned, we did preview the revised

9    proposed order that we filed last night at Docket No. 562 with

10   counsel for those parties.  So, my understanding is that those

11   parties do not oppose what we're requesting here today, and

12   that is to extend the filing period for Debtor, Stoli USA, to

13   June 30th, and then kick the solicitation period by another 60

14   days added on top of that for August 30th.

15       Given that the Debtors have made substantial progress in

16   moving forward with the plan, we've reached a resolution with

17   the Committee, we're continuing to discuss with Fifth Third

18   Bank, we believe that there is more than sufficient cause here

19   for the Court to enter this order on this motion, particularly

20   because it is also unopposed.

21       But we think that doing that will help preserve judicial

22   resources, allow the Debtors to solely focus on getting this

23   plan hopefully to the goal line by the end of July without the

24   fear of any distractions or competing plans, things of that

25   sort.

1      So, I'm happy to answer any questions that the Court may

2  have, and if there's none we would simply ask the Court to

3  enter that revised proposed order that I mentioned.

4            THE COURT:  All right.  Thank you.

5            MR. JONES:  Thank you.

6            THE COURT:  Anybody have any comments, concerns?

7            MR. MCILWAIN:  Your Honor, Brent McIlwain here for

8  Fifth Third.  I think we're okay with the exclusivity

9  extension.

10           THE COURT:  All right.  Thank you.

11     All right.  I don't hear anybody else jumping up to

12  object.

13     So, I do find there's ample cause to extend exclusivity,

14  just based on my review of the docket, my memory of what's

15  happened in the case, the deals that have been obtained so

16  far, and the progress that the Debtor is making towards

17  reorganization.  So I think there's ample cause.  I'll grant

18  the motion.

19           MR. JONES:  Thank you, Your Honor.  And we will

20  upload the proposed order as soon as the hearing wraps today.

21     The second motion, Your Honor, Item B on the agenda, is

22  the motion to conditionally approve the disclosure statement.

23  We filed that on May 9th at Docket No. 409.  Just kind of a

24  rendition of the plan and related filings that we have

25  connected to that.  So, we did file the plan on April 29th,

1    the original plan, at Docket No. 389.  Disclosure statement a

2    little while after that, while we were fine-tuning details.

3    That was on May 9th at Docket No. 408.

4        We did file last week, at the end of last week, a notice

5    of the revised amended plan that encapsulates the agreement

6    that we reached with the Committee pursuant to the term sheet

7    that we filed on the docket.  And then we filed an

8    accompanying disclosure statement along with that that

9    essentially built those -- I'll talk about it in more detail

10   -- but essentially built in that resolution and addressed some

11   other comments that the Committee had.

12       To address just some additional fine-tuning and tweaks, we

13   did file a notice of revised amended plan and notice of

14   revised amended disclosure statement, and that was last night

15   at Docket No. 564 and 565.  And then we filed a full suite of

16   the revised order on the disclosure statement motion as well

17   as all the accompanying exhibits that will go out for

18   solicitation yesterday evening as well, and that was at Docket

19   No. 563.

20       And for folks that are listening along, we thought it

21   might be helpful for the people who may have reviewed the

22   amended plan that was filed late last week, we attached

23   Exhibit C to those two notices that I mentioned last night

24   that are just changed pages only, a redline so that you can

25   just kind of see what the iterations were between those, so

1  hopefully --

2         THE COURT:  All right.  That was very helpful.  So

3  thanks for doing that.

4         MR. JONES:  Thank you, Your Honor.  And then before I

5  move through the meat of the motion and what we've changed and

6  where we are now, some housekeeping.  I would like to move for

7  the admission, again, it's Docket No. -- excuse me -- Docket

8  No. 568, our amended witness and exhibit list.  I'd like to go

9  ahead and move for admission of Exhibits 3 through 11, which

10 those are the notice of the amended plan, with the amended

11 plan attached, the disclosure statement, and then the balance

12 are the exhibits that will accompany the solicitation

13 materials.

14        THE COURT:  All right.  Any objections to Exhibits 3

15 through 11?

16     All right.  Those are admitted.

17     (Debtors' Exhibits 3 through 11 are admitted into

18 evidence.)

19        MR. JONES:  Thank you, Your Honor.

20     As far as responses, we did have one response that was

21 filed early on by the United States Trustee's Office.  I've

22 been in contact with Mr. Bublick, and we've tried to resolve

23 as much of that as we can.  I'll go through what we've been

24 able to resolve and what I view as the open issues.  Mr.

25 Bublick can, of course, speak to anything that I may get

1    incorrectly.

2        We also did have an objection that was filed by Fifth

3    Third Bank at Docket No. 510, and objection by the Committee

4    under seal at 523, and then a brief in support at 524.

5        My understanding with respect to those two groups of

6    objections is that the -- and Mr. Downs or Mr. McIlwain can

7    certainly correct me if I'm wrong; we've been having

8    discussions up until the hearing started -- but my

9    understanding is that the Bank is reserving rights.  They're

10   not waiving any objections that they may otherwise have to the

11   disclosure statement motion and the timing, things of that

12   sort, and we've baked that into the proposed order that we

13   submitted to the Court last night.

14       But otherwise, I believe that Firth Third is supportive of

15   us moving forward and trying to get this plan out for

16   solicitation.

17       But again, once I get through the presentation, I'll

18   certainly open up the podium to anybody else that wants to

19   comment on that.

20       With respect to the Committee's objection, I believe, now

21   that we have filed the amended plan and the amended disclosure

22   statement with the Committee's support and with all of their

23   input on those documents, as well as the solicitation order

24   and the exhibits, my understanding is that we have resolved

25   with the Committee.  So, I would believe that those would be

 1  moot objections at this point, but they can certainly correct

 2  me if my understanding is incorrect on that.

 3      Overall, though, Your Honor, the motion itself relates to

 4  the processes and procedures that we seek to implement to

 5  commence solicitation for the plan.  Exhibit 1 to the order is

 6  the solicitation procedures itself that kind of outlines who

 7  will be able to vote, who won't, other details of how the

 8  votes will be tabulated, counted.  It references Stretto, our

 9  claims and noticing agent, who is going to be in charge of

10  soliciting the plan and then tabulating the votes and then

11  eventually submitting the voting report.

12      The other exhibits, Your Honor, are the revised combined

13  notice of the confirmation hearing, which we will, of course,

14  serve on the parties as the materials go out, both voting and

15  nonvoting classes.  The ballot will go to voting classes only,

16  with an opt-out form included within the ballot.  So, it's all

17  kind of included in one package, rather than having to do

18  those separately.

19      We also have a nonvoting package that includes the notice

20  of the combined hearing and then an opt-in form.  If that opt-

21  in form is not returned, then that party is not bound by the

22  third-party release, but it does give them information that --

23  of how they can access the plan, notice of the combined

24  hearing, and the option to opt into that third-party release.

25      There is a cover letter that is also going to accompany

1    the solicitation package, and that's signed by the Debtors.

2    So, that'll go on the top.  We plan to send a USB drive with

3    the documents, and then the cover -- the solicitation

4    materials other than the cover letter, the ballot, and the

5    opt-out form.  And then we can direct -- we will direct

6    parties as to where they can go to access the plan and

7    disclosure statement on the Stretto website.  The cover letter

8    will detail all those instructions and does detail all of

9    those instructions.

10    And then for the Class 5 general unsecured claims, we have

11    a Committee support letter.  So, for that one, the cover

12    letter, and then the Committee letter will follow that.  And

13    then with all the other materials that I described for voting

14    parties.

15    The other objection that we had filed, Your Honor, related

16    to the U.S. Trustee.  As I kind of previewed, we would group

17    those -- or, the objection into three broad categories.

18    Objection to conditional approval of the disclosure statement

19    in general as not being authorized under the Bankruptcy Code

20    and applicable law.  There is also an objection to certain

21    provisions of the plan, including the exculpation provisions,

22    the third-party release, and the injunction provisions.  And

23    then there was a request for language to be added to the plan,

24    essentially reserving claims that government units may

25    otherwise be able to assert, just to make that abundantly

1   clear.

2        So, I'll start with that last point.  I believe we're

3   completely resolved on that.  The amended plan that we filed

4   has that reservation, the exact language requested by the U.S.

5   Trustee, baked in there.  So I think that we're safe there.

6        With respect to conditional approval, Your Honor, we do

7   disagree with the assessment of Section 105(7) -- or, I'm

8   sorry, 105(d)(2)(B)(6).  I don't know how I said that wrong.

9   But I knew I wasn't going to remember it correctly.  But we

10  disagree with the assessment of that provision of the

11  Bankruptcy Code.  As recently as this last week, I was here

12  when the Court announced and referenced with approval the *St.*

13  *Margaret's Health* case, where Judge Cleary reconciled 1126(f),

14  and then how to read that in conjunction with 105.

15       Essentially, the U.S. Trustee argues that only in small

16  business cases can you have conditional approval.  But as the

17  Court noted, and we agree, that would essentially make 105,

18  that language with conditional approval, surplusage, and would

19  also write out effectively the Complex Case Procedures and the

20  Local Rules that directly address this point.

21       So, for those reasons, Your Honor, we would ask the Court

22  to overrule that portion of the objection.

23       And then the last part of the objection that I mentioned

24  with respect to the plan provisions on injunctions and third-

25  party releases, we believe that all those issues are more

1   confirmation issues and are more appropriately addressed at

2   confirmation.

3        So, I'm happy to pause there, if the Court would like, if

4   Mr. Bublick would like to weigh in, or however you would like

5   us to proceed, Your Honor.

6            THE COURT:  Before I take up the U.S. Trustee's

7   objection, I'll ask if anybody else had any comments or

8   concerns on this motion.

9            MR. AXELROD:  Your Honor, Tristan Axelrod, Brown

10  Rudnick, for the Committee.  If I can make a very brief

11  statement.

12           THE COURT:  Sure.

13           MR. AXELROD:  Just to note my agreement with Mr.

14  Jones.  The Committee and the Debtors reached a term sheet

15  last week.  It's at Docket No. 543.  Among other things, it

16  states that once the Debtor has filed a plan with this Court

17  or the Committee that embraces the terms agreed upon, the

18  Committee will withdraw without prejudice its objections and

19  various other motions.

20       So, the plan filed last night was filed with the support

21  of the Committee.  It does reflect the terms, in our view.

22  And so our objection to the disclosure statement approval is

23  withdrawn.

24       I would also just note that my firm was counsel to a plan

25  that was confirmed yesterday following conditional approval in

1   the Southern District of Texas, *DocuData Solutions, L.C.*, 25-

2   90023, and our view, supporting the Debtors, is that

3   conditional approval of even large Chapter 11 cases is

4   customary and appropriate.

5        That's all.  Thank you, Your Honor.  Glad if you have

6   questions.

7             THE COURT:  All right.  No questions.  Thank you.

8             MR. FAGEN:  Your Honor, it's Matt Fagen at Kirkland &

9   Ellis on behalf of Bardstown Bourbon Company.

10       I would like to make a few statements.  I know there are

11  others in the court who may want to as well.  I just don't

12  want to lose my slot.  I don't know if Mr. Downs was preparing

13  to speak as well.  So, whenever the appropriate time is, I

14  would like to make a statement as well.

15            THE COURT:  Yes.  No time like the present, so go

16  ahead.

17            MR. FAGEN:  Okay, let me go for it.  And thank you,

18  Your Honor.  Again, for the record, it's Matt Fagen, Kirkland

19  & Ellis, on behalf of Bardstown Bourbon Company, with

20  information and belief is the largest creditor at the Debtor,

21  Kentucky Owl, aside from Fifth Third, who you've seen a lot of

22  in this case.

23       You've only seen a little bit of us, and mostly reserving

24  rights, and we've tried to be cooperative.  We are trying to

25  be cooperative here at the conditional disclosure statement

1   approval phase as well.  And to be clear, we're not objecting

2   to conditional approval of the disclosure statement.  We want

3   the Debtors to move forward and to move these cases to

4   conclusion, and we agree that conditional approval here is an

5   important step.

6       I do also want to quickly thank the Debtors and their

7   counsel for working with us on including some of our proposed

8   language, most of our proposed language, to this disclosure

9   statement to highlight a few different disputes that we have.

10  That should be coming up at the confirmation phase.

11      Your Honor, I do want Your Honor to be aware, all of the

12  parties to be aware, although I think they are, that we,

13  Bardstown Bourbon Company, have major issues with the proposed

14  plan, and specifically the proposed treatment of Bardstown

15  Bourbon Company's secured and potentially deficiency unsecured

16  claim under that plan.  And I'll highlight a few of the issues

17  for Your Honor very quickly.

18      Your Honor, the plan proposes to pay Bardstown Bourbon

19  Company's Class 3 secured claim.  It just classifies Bardstown

20  Bourbon Company claim into Class 3, whether it's secured or

21  unsecured deficiency.  It makes clear that the Class 5 general

22  unsecured claims will not include Bardstown Bourbon Company's

23  deficiency claim.  And the plan proposes that Bardstown

24  Bourbon Company, on account of its claim, will either get an

25  apportionment of barrels that it is currently storing and has

1    asserted a mechanic's lien on -- Fifth Third Bank, just to

2    bring it full circle, also has a lien on those barrels, at

3    least with respect to their Kentucky Owl revolver that

4    Bardstown Bourbon is subordinate to.  So, they're either

5    proposing, at their own election, return of or transfer of

6    title of some of the barrels -- very unclear which ones or how

7    many -- or payment over time in a similar manner as the other

8    general unsecured claims are proposed to be paid, but with

9    some fundamental differences that make very clear that the

10   proposed treatment for Bardstown Bourbon's deficiency claim,

11   to the extent there is one, and we have to assume that there

12   will be one because we've been provided very little to nothing

13   on account of the barrel value that we'd be getting, that that

14   deficiency claim would be treated very differently than the

15   general unsecured creditor deficiency claims that we would

16   have the same priority to fundamentally under the Bankruptcy

17   Code.

18        And specifically, the Class 5 treatment of general

19   unsecured claims was clearly heavily negotiated between the

20   Creditors' Committee -- you know, we know them, we know their

21   counsel well, we would expect nothing less -- and the Debtors

22   for certain concepts and protections, including an escrow of

23   initial amounts, initial claim estimate amounts, to provide

24   some meaningful cash in the system for distribution, in

25   addition to additional security to guarantee payment, we've

1   heard a little bit about it, in the form of a Kentucky real

2   estate entity that I believe the understanding is has

3   significant value and is being appraised to certify that it

4   has significant value, to basically backstop and guarantee

5   that these unsecured creditors who are proposed to be paid in

6   full under the plan over time actually do get paid in full

7   over time.

8        However, Your Honor, and where I'm going with this next,

9   is no such guarantees are proposed to be made to Bardstown

10  Bourbon Company on account of its deficiency claim or its

11  secured claim that is higher in priority to these general

12  unsecured claims and may never be paid in full.

13       So, one, we have a class-skipping issue.  That's -- a

14  potential class-skipping issue and an absolute priority issue.

15  And two, we also have a discriminatory treatment between the

16  same priority deficiency unsecured claims that Bardstown may

17  have and the other general unsecured claims represented in the

18  aggregate by the Creditors' Committee.

19       These are -- this is a major claim for Bardstown.  It's a

20  major issue.  We have tried to avoid litigation in this case,

21  and we still hope that the Debtors will cooperatively work

22  with us in the very, very near term, because confirmation,

23  what they're proposing, is not far out.  We think that this

24  issue is kind of -- so kind of transparent, and it should be

25  rectified.  And that's what we want to focus on.

1      So, I'm hoping that we won't have to be litigating in your

2   courtroom in late July, Your Honor.  I do just want to raise

3   these issues to the extent we can't resolve these

4   appropriately.

5      I do also very quickly want to acknowledge that there are

6   some disputes as to the actual claim amount, and the Debtors

7   filed a schedule which we don't believe takes into account all

8   of the fees that have accrued.  The language that has been

9   added to the disclosure statement says very clearly that, to

10  the extent that the Debtors realize there is a discrepancy in

11  the schedules, they accrued where they scheduled our claim,

12  they will rectify that, and we'd ask that they stand behind

13  their commitment.  I believe that they will.  I did just want

14  to flag that as another related issue, given the magnitude of

15  the Bardstown claim in the context of the Kentucky Owl claims

16  base as a whole, and specifically if you take out the Fifth

17  Third claim.

18     I will pause there, Your Honor, and see if you have any

19  questions.  And I do appreciate the time.

20          THE COURT:  All right.  I don't have any questions.

21  I appreciate the heads-up on potential confirmation issues

22  that I might be seeing in about a month.  So, I don't have any

23  questions right now, other than -- no questions right now.

24          MR. FAGEN:  Thank you, Your Honor.

25          THE COURT:  All right.  Thank you.

1          I saw Mr. Axelrod's -- virtually, a hand is up on the

2     screen.  Did you want to say something, or was that a holdover

3     from -- and now you're muted.

4          MR. AXELROD:  It was a holdover from previously and I

5     forgot to turn it off.  Apologies, Your Honor.

6          THE COURT:  All right.  No problem.

7          All right.  Mr. McIlwain?

8          MR. MCILWAIN:  Thank you, Your Honor.  Brent McIlwain

9     here for Fifth Third.  Just a couple of things.

10         First of all, Ms. O'Neil, I think, stated at the outset

11    that the plan was largely agreed to.  And, you know, I

12    understand that the parties are discussing potential

13    resolution of the Fifth Third claim.  But as we sit here

14    today, this is a cramdown plan of Fifth Third's claim, which,

15    candidly, in my practice, I've never seen conditional approval

16    of a disclosure statement that moves to a contested cramdown,

17    and certainly not in three weeks.  So I want to flag that.  I

18    don't -- I'm not going to get into all of the issues related

19    to the treatment of Fifth Third's claim, but suffice it to say

20    it's unique inasmuch as it's not an interest rate dispute,

21    it's a combination of a *Sandy Ridge*, as Mr. Fagen suggested,

22    potential class-skipping, lien-stripping.  There's a lot of

23    issues.

24         And so I flag all of that only to say it's a little

25    unclear as it relates to the proposed order approving the

1   conditional approval.

2        And I should say at the outset, we're not -- Fifth Third

3   is not opposed to conditional approval today of the disclosure

4   statement, subject to this caveat.  The deadline or the date

5   of the confirmation hearing is the 21st.  If the Court looks

6   at the calendar, that's basically three weeks from now.  If we

7   all have agreement, this is entirely consistent with what I

8   think conditional approval of disclosure statements were meant

9   to do.  It's supposed to streamline the process when all

10  parties are in agreement and essentially, you know,

11  memorialize the agreement and get it done on a most -- a cost-

12  effective and efficient manner.

13       If we actually are not in agreement, candidly, the 21st of

14  July is just not a realistic date for confirmation of the

15  plan.

16       Now, what the order says is that by July 2nd, on July 2nd,

17  the parties are going to come to the Court with a proposed

18  scheduling order, and I think that's -- the parties are

19  working on that.  Hopefully, there'll be an agreement on plan

20  treatment and we won't need a scheduling order.

21       But if there's not, and if we come to the Court with a

22  scheduling order that's either agreed to or that we have some

23  disputes on July 2nd, I want it to be clear that we -- we do

24  not think that the deadline or the date of the confirmation

25  hearing of July 21st, in any realm of reasonableness, would

1  work.

2      And so what I would suggest, and if Ms. O'Neil and Mr.

3  Jones agree, that the Court's entry of this order is without

4  prejudice to the Court essentially treating the 21st as an

5  initial confirmation hearing date.  In other words, if we come

6  to the Court, and either as a result of our agreement on a

7  scheduling order, which, frankly, the parties can all agree

8  that that's what would happen, or there's a dispute and the

9  Court enters a scheduling order, you know, adjudicating the

10  disputes, that the Court and the parties understand that

11  Fifth Third is not going to be held to the 21st as the

12  contested cramdown confirmation hearing date.  And we're happy

13  to come back on the 2nd and raise this issue, but we don't

14  want the Court to assume that, by virtue of this being

15  entered, that we've essentially agreed to the 21st being the

16  date of the confirmation hearing that's proceeding on a

17  contested basis.

18      So I think, based on what I was hearing, that the parties

19  agree to that, that the Court essentially can modify or at

20  least mete out the confirmation hearing based on whatever we

21  agree to or the Court adjudicates on the 2nd, but I just want

22  to make that clear.

23          THE COURT:  All right.  Thank you.

24      So before I go to Mr. Bublick, maybe I'll just ask Ms.

25  O'Neil just to comment on the last comment.  I think you're

1    both on the same page.

2         MS. O'NEIL:  Well, first of all, Your Honor, just --

3    Holly O'Neil on behalf of the Debtors.  If I said everybody

4    was in agreement on a plan, I thought -- I did not think I

5    said everybody was in agreement on the plan.  In fact, I

6    thought I said the opposite of that.  But to the extent I was

7    unclear on the record, I thought I specifically said we do not

8    have an agreement with the Bank, and Bardstown in particular.

9         Regardless, Your Honor, we want to proceed.  I think all

10   of the parties have been pushing us to get to confirmation,

11   get this plan, get the plan process moving.  So I guess right

12   now I would say I would reserve.  I would like to be

13   optimistic, and there's been a lot of discovery.  There's been

14   a ton of information that the Bank has had.  What additional

15   -- I haven't seen any proposed scheduling or I haven't seen

16   any proposed list of witnesses.  I haven't seen any potential

17   additional discovery requests that they may have.  So I really

18   can't comment on the reasonableness of it and whether it's

19   stuff we've already provided to them, if it's new information,

20   if it -- what it is.

21        So all I know is, on behalf of the Debtors, we believe

22   proceeding as expeditiously -- and Your Honor, you know, our

23   plan -- you know, it's always one of those things, you file a

24   disclosure statement, you seek conditional approval, and then

25   enough time goes by that you're, well, I should have just

1  asked for straight-up approval on the front end anyway,

2  because I've met the statutory requirements.

3     The deadlines that we're proposing approximately meet the

4  statutory deadlines.  There's been weekly, constant reporting

5  to the Bank.

6     I mean, my hope is that we can come to a scheduling order

7  that would fit to facilitate a confirmation hearing on the

8  21st, but obviously the Court -- and it happens all the time

9  -- we notice, we aim for a date, and if it gets pushed a

10  little bit just to facilitate final preparation, then

11  certainly we're amenable to do that, and obviously that's the

12  Court's decision as to how to proceed.

13     So, a longwinded way of saying I don't think we're in

14  disagreement on that, but I'm not ready to just capitulate

15  that we're not going to go forward on the 21st today.  I

16  think, for planning purposes, all the parties need to know

17  when the confirmation hearing at least is intended to

18  commence, so that we can plan accordingly.  So, --

19          THE COURT:  All right.  I just, I don't have as good

20  a feel as both of you do on how big the gap is between the

21  parties.  If things go swimmingly and you come on July 2nd and

22  you have an agreement, that's great.  If you don't, I just

23  don't have a good feel, Mr. McIlwain, for how much farther

24  past the proposed confirmation date the Bank thinks it needs.

25  And I guess that will just be an item for the Bank and the

1  Debtors to discuss between now and --

2              MR. MCILWAIN:  July 2nd.

3              THE COURT:  -- July 2nd.

4              MR. MCILWAIN:  I think as long as we have the ability

5  to come back to the Court with the proposed schedule -- and

6  we're going to provide the proposed schedule today to the

7  Debtors.

8      I would say that, I mean, the disclosure statement doesn't

9  include, which isn't atypical, but it doesn't include a plan

10 supplement, and there are a lot of things -- when suggested

11 that we've gotten information, well, we don't really have the

12 information for what this plan is proposing.  And there's also

13 a Plan Sponsor that's not a United States-based company.  The

14 Committee has had some issues, or had some issues early on,

15 with serving discovery and getting responses from the Plan

16 Sponsor.  And so all of those issues will be included within

17 our proposed scheduling order.

18     I don't know how much longer -- we're going to try to move

19 it as quickly as possible, but what I -- I just don't think it

20 would be appropriate for us to suggest that we're good with

21 the 21st when we know, if there's going to be a contested

22 hearing, there's no way that we could do that in three weeks.

23 I mean, if we provided our discovery requests today and

24 everybody sat for depo... we don't -- we can't even engage

25 experts until we see their plan, and it's not -- when I say

1    their plan, their business plan.  Their business plan isn't

2    required to be provided until July 10th, right?  I mean, you

3    do the math.  There's just no way to do it.

4        I'm hopeful that we can reach an agreement.  I just want

5    the Court to know that the 21st is not a realistic deadline

6    for a contested hearing.  And we can raise those issues in

7    more depth once we've negotiated over a scheduling order.  Or

8    maybe we have a deal.  Maybe we have a deal globally and we

9    just say the 21st is perfect.  Right?  But at this point, the

10   21st frankly should just be a date that we check in with the

11   Court if we can't reach agreement.

12           THE COURT:  All right.  I don't have any opposition

13   to having a target date.

14           MR. MCILWAIN:  Yep.

15           THE COURT:  And I guess more to come on July 2nd.

16           MS. O'NEIL:  Thank you, Your Honor.  And I think Mr.

17   Jones is going to go through the schedule on the filing of the

18   plan supplement, but I can't let that statement go unresponded

19   to.

20       The Bank has had our model that shows the plan

21   projections, if you will, through -- for the next three years,

22   effectively, for quite some time.  So it's not that they're

23   waiting for the plan supplement to have this revealed.  So

24   they have had many iterations.  They've commented on it.

25   We've adjusted it.  They've had the model for quite a long

1   time.

2       So I just -- Court doesn't need to respond to that.  I

3   just for the record want to be crystal clear there has been a

4   lot of information that's been provided to the Bank already,

5   including the projections model.  And we've taken their

6   comments, we've adjusted it, we've given new versions of the

7   model.  So there's been a lot of exchange of information.

8       So, with that, if I may, Your Honor, unless the Court

9   wants to hear from other parties, I was going to cede the

10  podium back to Mr. Jones to finish his presentation.

11          THE COURT:  That's fine.  I haven't forgotten Mr.

12  Bublick, so whenever you want to address the U.S. Trustee

13  objection, we can do that, unless you had something else

14  first, Mr. Jones?

15          MR. JONES:  I was just going to go through the

16  balance of the exhibits, Your Honor, but I think now would be

17  as good a time as ever, --

18          THE COURT:  All right.

19          MR. JONES:  -- if Mr. Bublick wants to --

20          THE COURT:  All right.  Mr. Bublick?

21          MR. BUBLICK:  Thank you, Your Honor.  Asher Bublick

22  for the United States Trustee.

23      The U.S. Trustee, first, as a threshold matter, believes

24  that this case is not a small business case, and the

25  Bankruptcy Code does not permit conditional approval of the

1    disclosure statement under these circumstances.  Section

2    1125(f) provides an expedited pathway for conditional approval

3    only in small business cases, which this is not.  Conditional

4    approval here would short-circuit due process protections

5    embedded in the Code and permit solicitation of votes before

6    the Court or parties have had a full and fair opportunity to

7    vet the adequacy of the disclosures.

8         Your Honor has held that, on a case-by-case basis, this

9    Court would grant conditional approval when cases are

10   proceeding expeditiously and economically.  I think it is

11   clear, given the many contested matters and the appointment

12   for a trustee that has -- was pending for quite a long period,

13   that this request for conditional approval should be denied

14   here.

15        Turning to the substance, even if the Court considers the

16   adequacy of the disclosure statement at this stage, the U.S.

17   Trustee maintains that the disclosure statement as currently

18   drafted fails to provide adequate information as required

19   under Section 1125(a).

20        The most significant concern relates to the third-party

21   releases set forth in the plan.  The disclosure statement

22   fails to clearly and unambiguously inform creditors that they

23   must take two steps:  voting against the plan, and timely --

24   or for the plan, and timely submit the -- or timely elect the

25   opt-out box to avoid being a releasing party.

1        This dual-action requirement is buried in the complex plan

2    language and not clearly communicated to the affected parties.

3    And bankruptcy silence cannot be equated with consent, and

4    failure to make this mechanism transparent renders the

5    disclosure statement materially deficient.

6        The U.S. Trustee would prefer -- the U.S. Trustee believes

7    that an opt-out is too passive to constitute consent, and

8    would prefer an opt-in mechanism.  As currently amended, the

9    releasing parties definition is -- would be quite confusing to

10   most laymen, when, at the outset, it states that failure to --

11   or, voting in favor or against the plan would -- without

12   opting out would constitute consent to the waivers, to the

13   third-party liability waivers.

14       The last -- the later paragraph towards the end would

15   state that failure to return a ballot, opt-out form, or opt-in

16   form would not constitute consent to those waivers.

17       So the U.S. Trustee would argue that that is incongruous

18   and would probably be confusing to most laymen because they

19   might believe that, by submitting a ballot accepting or

20   rejecting the plan, but failing to elect the -- or, failing to

21   submit an opt-out box -- or excuse me, the opt-out box, they

22   would not be held to that consent, Your Honor.

23       And lastly, the U.S. Trustee understands that the

24   injunction would be an issue more appropriate for

25   confirmation.  So unless Your Honor would like to hear that

 1  argument, we would reserve that for confirmation.

 2      So, again, Your Honor, we just want to emphasize that we

 3  believe that the plan as currently amended and disclosure

 4  statement would be confusing to most laymen in that the, as

 5  it's currently written, a releasing party who doesn't submit a

 6  ballot or an opt-out form, or opt-in form, would not be held

 7  to the third-party release.

 8      Thank you, Your Honor.

 9          THE COURT:  All right.  Thank you.

10      Mr. Jones, before I rule on the other issues, I'll just

11  ask:  Did you and Mr. Bublick have a chance to chat on the

12  clarifying language that Mr. Bublick thinks would be --

13          MR. JONES:  We have had a chance to chat about it,

14  and I'm happy to continue that discussion after the hearing

15  and see if there's anything we can do to clean that up.

16      But I think that Mr. Bublick's last statement kind of hit

17  the nail on the head.  This is not a situation where we are

18  taking silence to bind someone to the third-party releases.

19  There's only two categories of people that will be bound to

20  the third-party release, and in both circumstances you have to

21  take an affirmative action.  Number one is you have to either

22  vote to either accept or to reject the plan, mail in the

23  ballot, and if you don't check the box then you're deemed to

24  have consented to the releases.  That's one option.

25      The other option is you're sent the opt-in form because

1    you're in a nonvoting class, and if you submit that form, you

2    mail it, fill it out, then you're bound to the third-party

3    releases.

4        But this is not a situation where we say, well, you didn't

5    send anything back, therefore, you're bound.

6        So to the extent that that's not clear, I'm happy to look

7    at it again with Mr. Bublick and see if there's anything we

8    can do to massage that and make it more clear.  But I

9    certainly want parties to be aware of those two alternatives.

10            THE COURT:  Right.  So, I kind of get it, because

11   I've read Judge Goldblatt's opinion and I've addressed this

12   issue before, so I kind of get what you're doing.  I guess, if

13   you have an opportunity to visit with Mr. Bublick, --

14            MR. JONES:  Absolutely.

15            THE COURT:  -- to the extent you can tweak it a bit

16   to make it clear that that's kind of the protocol you're

17   following.

18            MR. JONES:  Understood.  The only caveat with that is

19   -- and I'm certainly happy to have an off-the-record

20   conversation with him -- I don't know that we necessarily

21   agree as to whether somebody voting to reject the plan but not

22   checking the opt-out box, whether that would be sufficient.

23   So I guess if we could perhaps table that and just focus in

24   our discussions.  And I'm just saying this so that we're all

25   clear on making it clear as to what we are asking parties to

1    do, then we will certainly do that.  And then to the extent

2    that U.S. Trustee would like to go forward on any objections

3    that still remain on that, we certainly understand that they

4    can do that at the confirmation hearing and we'll be prepared

5    to address it.

6          THE COURT:  All right.  So I'll go ahead and rule on

7    the other objection, which is the issue about having a

8    combined plan, confirmation, and disclosure statement hearing

9    and having conditional approval of the disclosure statement.

10   I am going to follow the same ruling that I made recently in

11   the *Hooters* case, and I think the *St. Margaret's Health* case

12   does a good job of laying out the issue, and that's 659 B.R.

13   691.  But in a nutshell, I think the U.S. Trustee's position,

14   if I were to follow it, would render 105(d) superfluous.

15   Sometimes Congress doesn't do a great job when it enacts

16   provisions of the Bankruptcy Code to make it crystal clear

17   what it's doing, but the original Section 105, when it was

18   enacted in 1978, had the language that we're more familiar

19   with about judges being able to be roving commissions of

20   equity to do what they want.

21      That language, I don't -- I say that tongue in cheek, but

22   that language is still in 105.  The language that we're

23   talking about here today in 105(d) wasn't enacted until 1994,

24   which is the same time that 1125(f) was enacted.  So you have

25   two provisions of the Bankruptcy Code that appear to allow

1   what you're trying to do here today.

2        If conditional approval of a disclosure statement and a

3   combined hearing were only allowed in a small business case,

4   all you would need to look at is 1125(f), because it's a

5   standalone section but it provides for just that.  So I think

6   in order to give effect to both 105(d) and 1125(f), the way I

7   reconcile those is to say that, in small business cases, you

8   get an automatic default.  You can do that.  You can do a

9   combined hearing on a plan and disclosure statement and ask

10   for conditional approval of the disclosure statement.

11        In other cases, and Mr. Bublick is exactly right, it's not

12   in every case, but under 105(d) I do have to make a threshold

13   finding that I wouldn't have to make in a small business case,

14   which is that if it's something that ensures that the case is

15   handled expeditiously and economically, I can do this list of

16   things, one of which is having a combined hearing on a plan

17   and disclosure statement.

18        So I did find in the *Hooters* case that it met that

19   standard, and even though I understand Mr. Bublick's point

20   that there's a lot going on here, I've heard a lot today about

21   July 21st and whether or not the confirmation hearing is going

22   to go forward on that date, but I still believe that this is

23   one of the cases where a combined hearing would be appropriate

24   under 105(d), given my review of the docket, what's happened

25   in the case, the amount of fees that the estate is incurring

1   in professional fees.  I think the sooner this case gets out,

2   the better, and I don't want this to be the default rule for

3   all non-small business Chapter 11s, but I am going to find

4   that in this particular case, in Stoli, it would be

5   appropriate to do what the Debtor is proposing to do, which is

6   do a conditional approval of the disclosure statement and then

7   have a combined hearing on the disclosure statement and

8   confirmation.

9       The risk, as always, to the Debtor in doing it that way is

10  that if there's something really out of whack where I were to

11  find later on that the disclosure statement was not adequate,

12  the Debtor would have to start all over.  I've read the

13  revised disclosure statement.  I doubt that that's likely to

14  happen in this case.  And I think, with the parties that are

15  here and active, I think the real issues are confirmation

16  issues, and I think the -- so I am going to approve the

17  disclosure statement on a conditional basis as having adequate

18  information.

19      I do thank the U.S. Trustee.  I don't want to lift the

20  curtain too much on what we talk about in chambers, but some

21  of my law clerks have kind of chuckled because I say this just

22  about every time when the U.S. Trustee makes an objection.  I

23  do thank them, because I do appreciate the fact that they're

24  staying on top of issues like this.  They raise them.  I don't

25  always agree with U.S. Trustees.  Sometimes I sustain their

1   objections, sometimes I overrule them, but I very much

2   appreciate having the U.S. Trustee actively involved in a case

3   like this to help it move along and to keep their eagle eyes

4   on issues like this.

5       So I'm still going to overrule your objection, Mr.

6   Bublick, on that particular issue, but I do thank the U.S.

7   Trustee for being here and raising the issue.  So I'll

8   overrule that objection.

9       The issue about the releases and exculpations I think are

10  better addressed at confirmation, and so the only ask is if

11  there is a way to tweak the language to make it clear that

12  you're kind of following what Judge Goldblatt suggested in his

13  -- was it *Smallhold* (Court correction) opinion -- that some

14  affirmative act, even if you don't do everything that you

15  could potentially do, like opting out, some affirmative act

16  means that you're going to be opting in.  I can see that in

17  the documents that you have.  If there's anything you could do

18  to tweak it to satisfy the U.S. Trustee's concerns, that would

19  be great.

20          MR. JONES:  Yes, Your Honor.  We will endeavor to do

21  that.

22      And if we are able to do that, how would the Court prefer

23  us to, I guess, note that on the docket?  Would you like us to

24  file like a simple notice just showing the redline changes, or

25  --

1          THE COURT:  Yes.  Well, I think if you -- yes, a

2    redline would be helpful.

3          MR. JONES:  Okay.

4          THE COURT:  And then I guess if you come to an

5    impasse -- well, let me ask you this.  You're trying to get

6    this mailed out as soon as possible, right?

7          MR. JONES:  Thursday, Your Honor.

8          THE COURT:  Thursday?

9          MR. JONES:  And I can go through the schedule.  I

10   know you just ruled on the motion, and I do appreciate that.

11   But the way the schedule is laid out now, we will start -- the

12   voting record date is tomorrow.  We'll commence solicitation

13   on June 26th.  Stretto will start sending out the materials

14   then.  So we have a little bit of time.

15     I know that Stretto would certainly appreciate as much

16   time as we can give, and we will certainly endeavor to do

17   that, but I also want to try to nail this issue down as much

18   as we can as well.

19         THE COURT:  What about penciling in like a short

20   status conference sometime tomorrow?  If it's not resolved,

21   everybody hops on, I rule.  I either go with what you've come

22   up with or not.  That gives you a day to try and tweak that

23   particular issue with the U.S. Trustee.  Would that work?

24         MR. JONES:  Yeah.  That's fine.

25         THE COURT:  Mr. Bublick, does that work for you?

1              MR. BUBLICK:  Yes, Your Honor.

2              THE COURT:  All right.  So tomorrow we have an

3    omnibus -- sorry, we have an omnibus setting in the *Hooters*

4    case.  I'm drawing a blank and I can't think of anything that

5    we actually have going forward tomorrow in that case.

6              MR. JONES:  I can't, either, Your Honor.  I think

7    we're clear.

8              THE COURT:  So would 9:30 tomorrow morning work --

9              MR. JONES:  That'd be great.

10             THE COURT:  -- for the Debtors?  Would that work for

11   you, Mr. Bublick?

12             MR. BUBLICK:  Yes, Your Honor.

13             THE COURT:  All right.  So we'll pencil that in.

14   Hopefully, you can reach an agreement.  If you can't, we'll

15   have a very short status conference tomorrow where I'll put

16   that issue to bed one way or the other.

17             MR. JONES:  Okay.  Sounds good.

18             THE COURT:  Any other open issues on the motion for

19   conditional approval?

20             MR. JONES:  I don't believe so, Your Honor.  I went

21   through the exhibits that we filed that go with it, so I think

22   everything is clear.  We will, of course, populate the dates

23   and the times and things like that before we upload the order,

24   and of course talk to Mr. Bublick before we upload all those

25   materials.

1          Two kind of housekeeping matters, if you will, that I

2     wanted to alert the Court about is, number one, we filed the

3     application to employ Resolute yesterday evening pursuant to

4     that Sixth Stipulation and Agreed Order.  My understanding in

5     talking to Ms. Ferrufino is that we have a setting potentially

6     --

7               THE COURT:  The 26th, I think.

8               MR. JONES:  -- Thursday.  Yes, Your Honor.  I'll have

9     to check with her after the hearing because I'm drawing a

10    blank if it's in the morning or the afternoon.

11              THE COURT:  Yes, I read it, and I'm pretty sure it

12    was on the 26th.  Let me see if I see it on the calendar, but

13    at least your notice, I think, on the application --

14              MR. JONES:  Right.

15              THE COURT:  I'll bet my other law clerk's next

16    paycheck that it said the 26th, so --

17              MR. JONES:  That's a wager.  All right.

18              THE COURT:  All right.

19              MR. JONES:  The other thing I wanted to note for the

20    Court, so with that housekeeping matter, we do also have

21    within the plan, and this is part of the agreement that we

22    reached with the Committee, is to work as expeditiously as

23    possible to resolve general unsecured claims, and of course,

24    the claims of other creditors as well.  So we are going to tee

25    up what I would call a Claims Procedures Resolution Motion,

1   purely procedural in nature, we're not seeking any substantive

2   relief with that motion, but just kind of laying out some

3   procedures as to how we propose to do things, things like

4   notices of objection, things along those lines.

5        So I'm going to vet that with counsel for the Committee,

6   counsel for the Bank, hopefully by the end of the day today so

7   I have a chance to really kind of comb through everything.

8   And then, of course, the U.S. Trustee.  And provided that we

9   can all kind of get comfortable with that, we may file that as

10  soon as tomorrow morning and try to set that for that same

11  time, just because we believe the circumstances warrant the

12  emergency setting of that so we can really get going, given

13  the time constraints.

14              THE COURT:  All right.

15              MR. JONES:  So we did want to alert the Court to

16  that.

17              THE COURT:  All right.  Appreciate the heads up.

18              MR. BUBLICK:  Your Honor, if I may.  I had neglected

19  to also look at our Eastern District calendar, and I do have

20  some 341 meetings that I will be presiding over tomorrow

21  morning.  We have had some retirements in that district, or

22  all the attorneys in that district, so the U.S. Trustee's

23  Office in the Northern District is handling those matters as

24  well now.  And if the Court could accommodate a different time

25  tomorrow morning, we'd appreciate it.

1          THE COURT:  So the only other thing I have set

2  tomorrow, I have a Lubbock video docket.  I don't normally

3  handle Lubbock cases, but Judge Odell has a lot of recusals.

4  Ms. Ferrufino, do we know if anything's going forward tomorrow

5  at 10:00?  If we do, it's likely to be a very short hearing or

6  set of hearings.  We could potentially do 11:30, depending on

7  -- how long do think your --

8          MR. BUBLICK:  Oh, 10:30 would even be fine.  11:00 or

9  11:30 also as well, Your Honor.

10          THE COURT:  How about 11:00 o'clock, Mr. Jones?

11          MR. JONES:  That works for us.

12          MR. BUBLICK:  Thank you, Your Honor.

13          THE COURT:  All right.  We'll do 11:00 o'clock

14  tomorrow morning.

15      All right.  Anything else to button up?

16          MR. JONES:  Nothing else from the Debtors, Your

17  Honor.  We appreciate the Court's time, and, of course, the

18  parties and everybody weighing on.  This was kind of a

19  collective effort to get here, and a lot of different eyes on

20  the papers that we've presented to the Court today.

21  Hopefully, we can continue that.  And again, I appreciate the

22  Court and all the parties.  Thank you.

23          THE COURT:  All right.  Thank you.

24      Mr. McIlwain, anything else?

25          MR. MCILWAIN:  No, Your Honor.

1          THE COURT:  All right.  Mr. Downs, you're good?

2          MR. DOWNS:  I am, Your Honor.  Thank you.

3          THE COURT:  All right.  Mr. Axelrod?

4          MR. AXELROD:  All set.  Thank you, Your Honor.

5          THE COURT:  All right.  Anybody else?  All right.  So

6    I guess on the open issue with the U.S. Trustee, if you happen

7    to work it out today, just send us an email to the Settings

8    email letting us know that you'll just be uploading an order

9    with revisions.  That way, we'll know what to expect.

10          MR. JONES:  Very good.

11          THE COURT:  And if that's the case, we'll just take

12   it off the docket tomorrow morning.

13          MR. JONES:  Perfect.  Will do.  Thank you, Your

14   Honor.

15          THE COURT:  All right.  Well, thank you all for your

16   agreements and the heads-up on things to come.  The Court will

17   be in recess.  Thank you all.

18       (Proceedings concluded at 10:35 a.m.)

19                          --oOo--

20                         CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                        **07/12/2025**

24   _____        _____
     Kathy Rehling, CETD-444                        Date
25   Certified Electronic Court Transcriber

INDEX

PROCEEDINGS                                                    4

WITNESSES

-none-

EXHIBITS

Debtors' Exhibits 3 through 11                  Received  14

RULINGS

Motion to Extend or Limit Exclusivity Period (365)           12
- *Granted*

Motion for Conditional Approval of Disclosure                37
Statement (409) - *Granted*

END OF PROCEEDINGS                                           46

INDEX                                                        47