Katharine Battaia Clark (SBN 24046712)
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
Alexandra E. Rossetti (SBN 24125390)
**THOMPSON COBURN LLP**
2100 Ross Ave., Suite 3200
Dallas, Texas 75201
Phone: (972) 629-7100
Fax: (972) 629-7171
kclark@thompsoncoburn.com
lboydston@thompsoncoburn.com
arahn@thompsoncoburn.com
arossetti@thompsoncoburn.com

Max Schlan (*pro hac vice pending*)
**THOMPSON COBURN LLP**
488 Madison Avenue, 14th Floor
New York, NY 10022
Phone: (212) 478-7200
Fax: (212) 478-7400
mschlan@thompsoncoburn.com

*Proposed counsel for Bill Patterson, Chapter 11 Trustee of Stoli Group (USA), LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Stoli Group (USA), LLC, *et al.*, | § | Case No. 24-80146-swe11 |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## BRIEF IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR RECONSIDERATION OF STIPULATION AND AGREED ORDER
### [Relates to Dkt. No. 1122]

Comes Now, William R. Patterson, the Chapter 11 Trustee (the "**Trustee**") for debtor Stoli

Group (USA), LLC (the "**Stoli Debtor**"), by and through his proposed counsel, Thompson Coburn

LLP, and hereby files this *Brief in Support of Chapter 11 Trustee's Motion for Reconsideration of

Stipulation and Agreed Order* [Dkt No. 1146] (the "**Motion**"), pursuant to Federal Rules of

Bankruptcy Procedure Rules 9023 and 9024, and respectfully moves this Court to reconsider the

February 5, 2026 *Seventeenth Stipulation and Agreed Order Regarding the Final Order

Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third

Bank, National Association and Related Relief* [Dkt No. 1122] (the "**Seventeenth Stipulation**" or

"**Stipulation**"), and in support of the Motion, respectfully shows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are Stoli Group (USA), LLC (5602) and Kentucky Owl, LLC (3826). The Debtors' address is 135 East 57th Street, 9th Floor, New York City, New York.

**INTRODUCTION AND PRELIMINARY STATEMENT** ........................................................ 1

**PROCEDURAL BACKGROUND** ........................................................................................ 2

**ARGUMENT AND AUTHORITIES** .................................................................................. 4

    I.     Legal Standard ................................................................................................ 4

    II.    Entry of the Seventeenth Stipulation—a *de facto* Rule 9019 Global
          Settlement—Impermissibly Stripped the Trustee of Statutory Duties.................... 5

    III.   The Seventeenth Stipulation Hampers the Chapter 11 Trustee's Ability to
          Operate the Stoli Debtor's Business, Propose a Plan, and Perform His Other
          Statutory Duties. ............................................................................................ 9

          A.    Section 1108 of the Bankruptcy Code Provides the Trustee the Sole
                 Authority to Operate the Stoli Debtor's Business, Yet the
                 Seventeenth Stipulation Makes Continued Operation Economically
                 Untenable. ............................................................................................11

          B.    The Seventeenth Stipulation Impermissibly Impedes—or Entirely
                 Removes—The Core Statutory Powers of the Chapter 11 Trustee
                 Pursuant to § 1106 ................................................................................ 13

               i.    Intellectual Property is Central to Stoli Debtor's Operation,
                     Yet the Seventeenth Stipulation Divests the Trustee of All
                     IP-Related Enforcement Rights. .................................................. 13

               ii.   The Seventeenth Stipulation Impairs the Trustee's Ability to
                     Investigate and Prosecute Causes of Action Under 11 U.S.C.
                     § 1106(a)(3)............................................................................... 15

               iii.  The Seventeenth Stipulation Functionally Prevents the
                     Trustee from Performing his Statutory Duty to Review and
                     Administer Claims. ...................................................................... 18

                iv.  The Seventeenth Stipulation Undermines the Trustee's
                     Ability to Assess Feasibility and Formulate an Exit Strategy.
                     ................................................................................................ 19

**CONCLUSION** ........................................................................................................ 21

## **INTRODUCTION AND PRELIMINARY STATEMENT**

1.      The Trustee seeks reconsideration to prevent manifest injustice to the estate by addressing ambiguities and legal and practical constraints bottled into the Stipulation entered before his appointment. These constraints impermissibly alter (and limit) his ability to (a) carry out the duties imposed by the Bankruptcy Code, (b) operate the Stoli Debtor's business, and (c) formulate an exit strategy for the Stoli Debtor.[2]

2.      The relief requested is aimed at restoring alignment with the Bankruptcy Code's statutory scheme and preventing manifest injustice by preserving the statutory duties of a duly-appointed chapter 11 trustee. A nonexclusive list of the provisions that should be reconsidered includes:

- Transfer of all IP enforcement rights away from the estate - ¶5(f)
    - ¶5(g) – Transfers to GUC Ombudsman consent rights overriding Trustee authority to any action with respect to all rights incidental to Stoli Grantor's Trust rights of enforcement in connection with intellectual property rights held by Stoli USA
        - Fully strips Trustee's business judgment, which is then vested it in a non debtor, non statutory committee-created non fiduciary ombudsman
- Committee/GUC Trust Ombudsman consent rights overriding Trustee authority - ¶5(g) (consent right over Trustee actions regarding contracts with Related Parties and IP-related rights)
        - Fully strips Trustee's business judgment, which is then vested it in a non debtor, non statutory committee-created non fiduciary ombudsman
- Grant of exclusive litigation/causes of action/IP authority to the GUC Ombudsman - ¶5(f) (exclusive right to "use, prosecute, settle, or otherwise administer" Grantor Trust Assets)
- Pre-determined distribution of IP/litigation proceeds (sub rosa plan) to GUC Escrow–
    - ¶5(d) Provides GUC Ombudsman the authority to create the escrow and decide its distribution mechanics upon acceptance by the Committee

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meaning set forth in the Seventeenth Stipulation.

- ¶5(f) (all proceeds of the Stoli Grantor Trust Assets must be remitted to GUC Escrow "until GUCs are paid in full")
- ¶5(i) Authorizing Ombudsman to make distribution from the Escrow, because once funds are deposited, they are no longer property of the estate.

- Stoli Grantor Trust given exclusive right to "use, prosecute, settle, or otherwise administer the Stoli Grantor Trust Assets." ¶5(f)
- Designation of escrow funds as "not property of the estate" - ¶5(i)
- Committee is granted full control over the employment of the Ombudsman and the rights vested in him. - ¶5(h)
- Limitation or displacement of Trustee's §363 / §365 powers - ¶5(g) (Ombudsman consent required for contract decisions and IP-adjacent rights)
- Structural re-allocation of claims prosecution authority - ¶5(f) (vesting Grantor Trust Claims in the Grantor Trust); ¶5(g) (exclusive prosecutorial authority of Ombudsman)
- Mandatory diversion of cash collateral (20% skims) - ¶5(b), (c), (d)
- Large upfront carve-outs that strip operating liquidity
  - ¶5(b) (up to $3.5M Agreed Remaining Carve Out Payments)
  - ¶5(d) (up to $1GUC Escrow/Reserve)

3.        While the Trustee is hopeful that a resolution of his fundamental concerns can be reached consensually, the operation of the Bankruptcy Rules and the natural timing of events in this case required the filing of this Motion after less than 48 hours of his appointment. Accordingly, the Trustee reserves his right to supplement, amend, or withdraw this request.

## **PROCEDURAL BACKGROUND**

4.        On November 27, 2024 ("**Petition Date**"), the Stoli Debtor and Kentucky Owl, LLC ("**Kentucky Owl**," and with the Stoli Debtor, "**Debtors**"), filed voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Court**").

5.        Two days later, on November 29, 2024, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 10] (the "**Cash Collateral Motion**"). As

of the Petition Date, the Debtors were borrowers under certain Prepetition Loan Documents (as defined in the Cash Collateral Motion) with Fifth Third Bank, National Association ("**Lender**").

6.      Subsequently, the Court entered two interim orders authorizing the Debtors' use of cash collateral [see Docket Nos. 38, 124], before entering the *Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection to Fifth Third Bank, National Association* [Docket No. 188] (as amended to date, the "**Final Cash Collateral Order**").

7.      The Debtors subsequently filed three additional cash collateral motions [*see* Docket Nos. 273, 303, 364], and the Court entered 17 stipulations and agreed orders[3] regarding the Debtors' continued use of Cash Collateral (as defined in the Final Cash Collateral Order) after the Termination Date (as defined in the Final Cash Collateral Order).

8.      On January 14, 2026, the Debtors filed their *Emergency Motion For Entry Of An Order (i) Converting The Chapter 11 Cases To Chapter 7 and (ii) Granting Related Relief* [Docket No. 1042] (the "**Debtors' Motion to Convert**").

9.      The next day *The Official Committee of Unsecured Creditors' Emergency Motion for an Order Pursuant to Section 1112(B) of the Bankruptcy Code Converting These Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Docket No. 1043] (the "**Committee's Motion to Convert**") was filed.

10.     The next day, the Lender filed its *Emergency Motion for the Appointment of Chapter 11 Trustees for Each of Stoli Group (USA), LLC and Kentucky Owl, LLC* [Docket No. 1055] (the "**Motion to Appoint Chapter 11 Trustees**").

11.     The Court held a status conference on February 5, 2026, to continue discussions on the Debtors' Motion to Convert, the Committee's Motion to Convert, and the Motion to Appoint

---

[3] Docket Nos. 291, 339, 388, 411, 463, 554, 620, 670, 859, 910, 949, 972, 980, 991, 1015, 1095, 1122.

Chapter 11 Trustees. That same date, the Court entered the Seventeenth Stipulation and the *Order Directing Appointment Of Chapter 11 Trustees* [Docket No. 1123].

12.    On February 18, 2026, the United States Trustee for Region 6 filed a *Notice of Appointment of Trustee* [Dkt. No. 1131], appointing William R. Patterson as the chapter 11 trustee for the estate of the Stoli Debtor.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.    LEGAL STANDARD**

13.    Pursuant to Federal Rule of Bankruptcy Procedure 9023, incorporating Federal Rule of Civil Procedure 59(e), a motion for reconsideration is appropriate to correct manifest errors of law or fact or to present newly discovered evidence to prevent manifest injustice. Fed. R. Civ. P. 59(e). To prevail on a motion for reconsideration, also known as a motion to alter or amend the judgment, the movant has the burden of establishing one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). A court has "considerable discretion" in deciding a motion to alter or amend and the court "must strike the proper balance between…(1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

14.    A motion for reconsideration pursuant to Bankruptcy Rule 9023 must be filed within fourteen (14) days after the entry of the order at issue. Fed. R. Bankr. P. 9023.

## II.    ENTRY OF THE SEVENTEENTH STIPULATION—A DE FACTO RULE 9019 GLOBAL SETTLEMENT—IMPERMISSIBLY STRIPPED THE TRUSTEE OF STATUTORY DUTIES.

15.    At the hearing approving the Seventeenth Stipulation, the Court observed: "[T]here's no question that the order binds the future Trustees, subject to their reconsideration rights. But it sells as part of a package deal that provides substantial benefits to the Trustees who, for example, might not otherwise have any assurance of payment of their professionals once they are selected." Transcript of Oral Ruling on Seventeenth Stipulation at 6:25–7:5 (February 5, 2026) ("**Exhibit A**"). The Court's approval hinged in part on the premise that the Stipulation conferred *meaningful benefits* on the future trustees, even though neither trustee participated in the negotiations and the Order would bind those fiduciaries. *That premise is incorrect. The Stipulation does not provide any benefits that the Court understood it to provide*, and it was approved through a truncated process despite its binding and priority-affecting consequences. Those circumstances implicate due process concerns not only for the Trustee, but for all parties in interest whose statutory rights and expectations are altered by the Stipulation.

16.    A chapter 11 trustee's powers are not derivative of creditor consent; they arise by statute. *See* 11 U.S.C. §§ 1108, 1106, 704, 363, and 365. An order that reallocates litigation authority, intellectual property control and enforcement rights, claims-administration mechanics, and operational discretion necessarily affects the Trustee's legal obligations under the Code. Rule 9019 and the notice regime of Rule 2002 exist to prevent an "approve-first, justify-later" process. Fed. R. Bankr. P. 9019(a), 2002(a)(3). This holds especially true when that involves a wholesale reduction of a trustee's powers. *See In re Lowry Graphics, Inc.*, 86 B.R. 74, 76 (Bankr. S.D. Tex. 1988) (although a chapter 11 trustee has considerable scope to exercise business judgment, this scope "does not include leave to delegate virtually all of his chief executive officer duties, or any

of his specific duties as a representative of the court, without prior notice to creditors and without leave of court.").

17.     The Seventeenth Stipulation functions as a *de facto* global compromise governed by Bankruptcy Rule 9019. Bankruptcy Rule 9019 applies to compromises that affect estate rights broadly and must be approved only "after notice and a hearing." Fed. R. Bank. P. 9019(a). Yet less than one day's notice was provided. When a settlement predetermines distributions or has plan-like effects, courts apply heightened scrutiny to ensure compliance with Code priorities and protection of non-settling parties. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298–99 (5th Cir. 1984) (pre-plan settlement must honor Code priority; remanding for adequate findings); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455–56, 464–66 (2d Cir. 2007) (priority compliance is the most important factor for pre-plan settlements under Rule 9019); *see also Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 466–68 (2017) (non-consensual priority-skipping distributions impermissible). Moreover, "when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties." *In re Miami Metals I, Inc.*, 603 B.R. 531 (Bankr. S.D.N.Y. 2019).

18.     Here, the Seventeenth Stipulation was subject to heightened scrutiny because it predetermines distributions (to some but not all administrative creditors) and to general unsecured creditors, effectively giving independent legal status to the Committee (which the Bankruptcy Code creates) somehow divorced from the strictures of the bankruptcy scheme by channeling what would be Committee concerns into a legal entity (the Grantor Trust).[4] It further resolved disputes

---

[4] By channeling estate value to a GUC Escrow outside a confirmed plan, the Seventeenth Stipulation creates significant *Jevic*-type concerns if the case is converted or dismissed. Creditors whose priority rights may be impaired were entitled to notice sufficient to raise those objections before approval. *See In re Biolitec, Inc.*, 528 B.R. 261, 271-72 (Bankr.

over trustee appointment and conversion, reassigned control over estate causes of action and intellectual property enforcement, fixed the disposition of litigation proceeds, and imposed binding limitations on the authority of any subsequently appointed trustee—all features that warrant Rule 9019 review with appropriate notice. *See* Fed. R. Bankr. P. 9019(a), 2002(a)(3). It is unclear from the record whether any heightened scrutiny was applied. Even if it had been, less than one day's notice of such substantive impact is insufficient.

19.     The Court in *Lowry Graphics* established two critical due process principles directly applicable here. 86 B.R. 74, 76 (Bankr. S.D. Tex. 1988). First, court approval of a stipulation is not enough; the court must affirmatively authorize the specific delegation or limitation of trustee duties after notice to creditors. Second, notice is indispensable because delegation of trustee authority "affects the entire estate and all creditors have an interest in how the trustee performs statutory duties." 86 B.R. at 76. The Stipulation satisfied neither requirement.

20.     Even where notice and court approval are provided, delegation of trustee duties must be justified as necessary and cost-effective. *In re Abraham*, 163 B.R. 772 (Bankr. W.D. Tex. 1994) teaches that courts should deny delegation where the trustee can perform the duty effectively without assistance. Likewise, *In re Guyana Development Corp.*, reflects the principle that trustees must personally perform core functions and may not outsource or relinquish them wholesale. 201 B.R. 462 (Bankr. S.D. Tex. 1996). The Stipulation contains no findings—procedural or substantive—satisfying these standards.

21.     The issue is not whether the Stipulation was negotiated in good faith or whether substantial benefits accompany it. The Court characterized the Seventeenth Stipulation as a

---

D.N.J. 2014) (denying settlement that "clearly affects parties' rights" where "parties other than those to the settlement did not receive disclosures or the opportunity to negotiate or vote on the settlement's provisions").

"package deal" that "greases the skids" for transition and provides benefits to future trustees. Tr. at 10:2-7. As set forth below, the Trustee has inherited burdens that outweigh any benefits the Stipulation may provide.

22.     The Court notes three times that the trustees are given certain substantial benefits and assurances upon which the Court relied to make its decision, yet such certain or substantial benefits are absent from the Seventeenth Stipulation. The only benefit specifically mentioned by the Court is the "assurance of payment of their professionals once selected." Tr. at 6:25–7:5. Instead, the Stipulation makes minor mention of trustee professional fees stating not that such fees are assured or provided, but instead that any budget must provide for Committee fees and that post-appointment trustee fees "are subject to further written consent from the Lender." Seventeenth Stipulation at 5(c).

23.     Additionally, now that the Trustee has been appointed and is charged with performing duties that the Seventeenth Stipulation materially constrains, the constitutional and statutory framework requires that he be afforded a meaningful opportunity to address those constraints.

24.     Reconsideration is therefore not an attempt to relitigate negotiated economics. It is the procedural mechanism the Court itself identified as appropriate for a future trustee to raise due process, statutory, and other concerns. *See* Tr. at 5:20-24, 7:1. Granting targeted reconsideration here would cure any structural due process deficiency without undoing the entirety of the settlement.

## III.   THE SEVENTEENTH STIPULATION HAMPERS THE CHAPTER 11 TRUSTEE'S ABILITY TO OPERATE THE STOLI DEBTOR'S BUSINESS, PROPOSE A PLAN, AND PERFORM HIS OTHER STATUTORY DUTIES.

25.      Congress created a comprehensive statutory structure governing the appointment, role, and powers of a chapter 11 trustee. See 11 U.S.C. §§ 1104(a) and 1106. Once appointed, the chapter 11 trustee—not the debtor-in-possession, not the Committee, and certainly not a contractually created "ombudsman"—becomes the sole fiduciary authorized to operate the business, control estate property, investigate the debtor's affairs, administer or prosecute estate causes of action, and propose a plan. *See In re Mandel*, 641 Fed. Appx. 400, 402 (5th Cir. 2016) ("the general rule is that once a trustee is in a bankruptcy case, the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued") (internal citations omitted); *In re Lowry Graphics, Inc.*, 86 B.R. at 76 (stating that a chapter 11 trustee is "charged with the duty of acting as the chief executive officer of a corporate debtor"); *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797 (Bankr. S.D. Tex. 1993) (stating that once appointed, a chapter 11 trustee owes certain fiduciary duties, similar to a director's duty, to the debtors, its shareholders, and its creditors).

26.      Furthermore, section 1108 of the Bankruptcy Code provides: "Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108. Operation is therefore the rule—not the exception—once a trustee is appointed. That authority is reinforced by § 1106(a), which imports the § 704(a) duties, charging the trustee to: be accountable for all property received (§ 704(a)(2)), investigate the operation of the debtor's business and the desirability of its continuance (§ 1106(a)(3)), evaluate causes of action available to the estate (§ 1106(a)(4)), examine and object to claims when appropriate (§ 704(a)(5)), and, as soon as practicable, file a plan or recommend conversion or dismissal (§ 1106(a)(5))—all tasks that presuppose the trustee's

control over the cash-collateral budget, the timing and magnitude of administrative outflows, the

allocation of scarce liquidity to preserve or maximize value, the use and enforcement of intellectual

property, and all estate causes of action. In short, *the Code requires that operating the business,*

*plan proposal, and wind-down decisions flow from the trustee's business judgment—not from pre-*

*committed diversions or contractual reassignments that make lawful operation impracticable*.

27.     A stipulation cannot override this statutory design. *See Law v. Siegel*, 571 U.S. 415,

421 (2014) ("a bankruptcy court may not contravene specific statutory provisions"); *cf. Matter of*

*Evergreen Helicopters International Incorporated*, 50 F.4th 547, 558-59 (5th Cir. 2022) (finding

that a trustee of a litigation trust who was assigned powers related to avoidance actions cannot be

enjoined from pursuing avoidance claims under the Bankruptcy Code by a restriction in a pre-

petition settlement agreement). While a debtor-in-possession may enter into agreements during the

case, those agreements cannot contractually reassign or limit the statutory powers Congress vested

exclusively in a Chapter 11 trustee upon appointment.

28.     In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, the Supreme Court

held that when a Bankruptcy Code provision states that "the trustee may" exercise a particular

power, only the trustee may exercise that power. *See* 530 U.S. 1, 6-8 (2000). The Supreme Court

emphasized that where Congress chooses to designate a specific actor, courts may not infer shared

or alternative authority. *Id*. at 7.

29.     That principle applies equally to statutory powers under: §§ 1108 (operation of the

business), § 1106(a) (investigation, plan, oversight duties), § 704(a) (accountability for property,

claims administration), and §§ 363, 365 (use, sale, and assumption/rejection of contracts). Thus, a

debtor, a committee, or a negotiated stipulation cannot reassign any of these statutory powers to a

third party.

30.     Notwithstanding the overriding statutory scheme placing these aforementioned duties squarely with the chapter 11 trustee, the Seventeenth Stipulation substantially undermines such authority. Accordingly, the Seventeenth Stipulation, to the extent it limits any statutory authority of the Trustee, cannot stand.

A.     **SECTION 1108 OF THE BANKRUPTCY CODE PROVIDES THE TRUSTEE THE SOLE AUTHORITY TO OPERATE THE STOLI DEBTOR'S BUSINESS, YET THE SEVENTEENTH STIPULATION MAKES CONTINUED OPERATION ECONOMICALLY UNTENABLE.**

31.     The Seventeenth Stipulation impermissibly impedes the Trustee's duty to operate the Stoli Debtor's business. Indeed, the Seventeenth Stipulation hard-codes multiple non-operational skims off of every incoming dollar of cash collateral—20% into the pre-stipulation attorneys fees funding the Agreed Remaining Carve Out Payments, then followed by 20% to the Stoli unsecured creditors—before a single priority or non-professional administrative claim is paid—funding the Stoli GUC Escrow—and layers those ongoing skims on top of other lump-sum carve-outs and reserves. *See* Seventeenth Stipulation at ¶5(a)-(d). These skims from operational cash are mandatory and untethered to the actual needs of the Stoli Debtor's business, coming ahead of actual expenditures necessary to the Stoli Debtor's continued operations.

32.     The Seventeenth Stipulation reduces available use of cash collateral by approximately $4.775 million. Indeed, the Seventeenth Stipulation mandates: (i) a carve out of up to $3.5 million as Stoli's portion of the Agreed Remaining Carve Out Payment (i.e., the pre-stipulation professional carve-out); and (ii) up to $1.275 million to the "Stoli GUC Escrow"—all apparently ahead of ordinary operating needs and before a single priority or non-professional administrative claim is paid or United States Trustee fees met. *See* Seventeenth Stipulation at ¶5(a)-(d).

33.    A mandatory 20% reduction in available cash collateral, without any safeguards to operations and oversight by the Trustee, threatens the integrity of the estate to continue in a manner that would generate a cash cycle in the first instance. The use of actual financials in this scenario is illustrative. The December Monthly Operating Report (the last available) [Dkt. 1062] reflects $7,092,401 million in total cash receipts with a positive cash flow of $534,846, leaving ending cash $1,195,171. However, if the Seventeenth Stipulation were in place at the time, the mandatory 20% skim of cash receipts required to cover the Agreed Remaining Carve Out Payments would equal approximately $1,418,480. This amount, obviously, exceeds all available cash for the period, leaving zero dollars available to fund the more than $200,000 in necessary expenses unpaid, including employees and post-petition vendors.

34.    Ultimately, the financials do not reconcile with the Trustee's obligation under §1108 to operate the business and under §§ 1106(a) and 704(a) to safeguard property and make informed go-forward decisions. Put simply, the Seventeenth Stipulation's pre-committed skims from cash collateral threaten to drain the estate without any safeguards or stop gaps whatsoever and override the trustee's statutory prerogatives and preclude lawful operation on the current cash profile.

35.    Because § 1108 makes operation of the business the rule absent an order "otherwise," any order that structurally prevents operation by diverting liquidity and subordinating operating needs to non-operating skims conflicts with the Code's allocation of authority to the Trustee and unreasonably threatens the estate the Trustee is charged with running. To ensure the Trustee's ability to operate the Stoli Debtor's business and the ability for the Stoli Debtor's business to survive to ultimately meet its outstanding obligations, the Seventeenth Stipulation cannot stand.

**B.    THE SEVENTEENTH STIPULATION IMPERMISSIBLY IMPEDES—OR ENTIRELY
REMOVES—THE CORE STATUTORY POWERS OF THE CHAPTER 11 TRUSTEE
PURSUANT TO § 1106.**

**i.    *Intellectual Property is Central to Stoli Debtor's Operation, Yet the
Seventeenth Stipulation Divests the Trustee of All IP-Related
Enforcement Rights.***

36.    A chapter 11 trustee who cannot control and enforce the Stoli Debtor's intellectual
property cannot meaningfully operate the Stoli Debtor's business. Intellectual property is not a
peripheral asset of the Stoli Debtor—it is central to enterprise value and core operations. For a
branded liquor company, intellectual property rights *and the ability to enforce them* are the primary
sources of commercial leverage, revenue protection, and settlement value. The Bankruptcy Code
therefore presumes that decisions regarding the use, enforcement, monetization, or disposition of
intellectual property will reside with the Chapter 11 trustee as part of the trustee's operational and
asset-management authority under §§ 1108, 1106, and 363.

37.    By stripping the Trustee of all IP-related enforcement rights and by vesting
"exclusive" authority to use, prosecute, settle, or administer those rights in the Stoli Grantor Trust
(the "**Grantor Trust**"), (*see* Seventeenth Stipulation at ¶5(f)), the Seventeenth Stipulation
removes the Trustee's ability to deploy the Stoli Debtor's most valuable leverage in negotiations
with counterparties, insiders, licensors, distributors, and creditors. As courts have recognized,
§ 363 authority exists precisely because asset control and business judgment cannot be
meaningfully separated. *See Central State Bank v. McCabe (In re McCabe)*, 302 B.R. 873, 876-77
(Bankr. N.D. Iowa 2003) (holding that § 363 powers are reserved to the trustee and cannot be
exercised by non-trustee actors by consent or implication).

38.    The operational impairment is not hypothetical. If the Trustee determines that a
sale, license, or settlement involving intellectual property is necessary to the Stoli Debtor's

business, supports a going-concern transaction, or facilitates an orderly wind-down, the Seventeenth Stipulation provides no coherent mechanism for doing so.

39.     This fragmentation creates an unworkable governance structure. If the Trustee has concerns or difficulties arising from its licensing, shared services, or other similar agreements and must deal with those through this Court or otherwise, the Trustee will have to go to the Ombudsman—who allegedly owes no fiduciary duties to the estate—to coordinate resolving the issue. This system created by the Stipulation also exponentially increases the costs.

40.     Courts have rejected precisely this type of division of control. In *In re Calvary Temple Evangelistic Association*, the court held that § 363 decisions require centralized authority and business judgment, and that neither a creditors' committee nor a court exercising equitable powers may displace the trustee's role in controlling estate assets. 47 B.R. 520, 522–25 (Bankr. D. Minn. 1984). The court emphasized that § 363 transactions involve ongoing operational decisions, negotiation, and accountability—functions that "simply create too many obstacles" when removed from the fiduciary charged with running the estate.

41.     By removing IP enforcement and contract negotiation authority wholesale from the Trustee, the Seventeenth Stipulation leaves the Trustee with responsibility for operating the business but without control over the asset that provides the greatest negotiating leverage. This asymmetry undermines the Trustee's ability to deal effectively with all constituents—including the secured lender, the Committee, the parent, and potential purchasers—and renders the Trustee's statutory role illusory. A trustee who cannot control and enforce the Stoli Debtor's intellectual property cannot meaningfully operate the Stoli Debtor's business.

42.     These defects cannot be cured by characterizing the transfer as consensual or efficient. Section 363 does not permit partial delegation of asset control to a non-estate fiduciary,

and § 105 cannot be used to create a bifurcated governance regime that the Code itself does not allow. *See McCabe*, 302 B.R. at 876–77; *Calvary Temple*, 47 B.R. at 523–25.

43.    The appropriate remedy is targeted and narrow: restore IP enforcement and monetization authority to the Trustee, while permitting the Committee or Grantor Trust to seek derivative standing to prosecute specific claims upon a proper showing. This preserves consensual value for GUCs while reuniting operational control, asset leverage, and fiduciary accountability where the Bankruptcy Code requires—with the Chapter 11 Trustee.

> ## ii.    The Seventeenth Stipulation Impairs the Trustee's Ability to Investigate and Prosecute Causes of Action Under 11 U.S.C. § 1106(a)(3).

44.    The Bankruptcy Code assigns responsibility for investigating the debtor's affairs and prosecuting estate causes of action squarely to the Chapter 11 trustee. Section 1106(a)(3) directs the trustee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor" and to report on matters relevant to the case or the formulation of a plan. 11 U.S.C. § 1106(a)(3). That investigative mandate is a core trustee function and a necessary predicate to informed decisions regarding litigation strategy, settlement, claims, and plan feasibility or conversion or dismissal.

45.    The language of § 1106(a)(3) gives the court discretion to shape the *scope* of an investigation—"except to the extent that the court orders otherwise"—but it does not authorize the wholesale transfer of investigative or prosecutorial authority away from the trustee. Courts interpreting § 1106(a)(3) have consistently emphasized that the provision expands judicial flexibility in directing investigations, including through the appointment of an examiner under §§ 1104(c) and 1106(b); it does not strip the trustee of control over estate litigation. See *Gordon Props., LLC v. First Owners' Ass'n of Forty Six Hundred Condo. (In re Gordon Props., LLC)*, 514

B.R. 449, 452 (Bankr. E.D. Va. 2013); *In re Gross*, 121 B.R. 587, 591 (Bankr. D.S.D. 1990) ("The court has latitude in ordering the goals of a section 1106(a)(3) investigation.").

46.     The Seventeenth Stipulation exceeds that limited statutory carve-out. Rather than directing or narrowing the scope of a trustee-led investigation, it removes categories of causes of action from the Trustee's control altogether and vests exclusive authority to investigate, prosecute, settle, and administer those claims in a Grantor Trust controlled by a non-estate fiduciary. That is not a permissible exercise of the Court's discretion under § 1106(a)(3); it is a reassignment of the trustee's core managerial and litigation powers.

47.     Litigation authority over estate causes of action cannot be unilaterally transferred by contract. *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (finding causes of action are property of the bankruptcy estate, and as such, the trustee is the "real party in interest with exclusive standing to assert them" even where a settlement agreement granted the causes of actions to the another party). The Bankruptcy Code does not permit parties to pre-assign prosecutorial control over estate claims to a committee or trust simply because the claims are expected to generate value. *See id.*; *see also Matter of Community Home Financial Services Incorporated*, 990 F.3d 422, 427 (5th Cir. 2021) (stating that a trustee's standing stems from the trustee's duties to administer the bankruptcy estate, not from any pecuniary interest in the bankruptcy). To the contrary, §§ 1106 and 704 contemplate that the trustee will evaluate whether, when, and how estate claims should be pursued, compromised, or abandoned in light of overall case strategy.

48.     It is true that, in limited circumstances, a creditor or creditors' committee may obtain standing to prosecute estate claims. But that standing arises only after a court-approved showing that the proposed litigation is (i) in the best interest of the bankruptcy estate and

(ii) necessary and beneficial to the fair and efficient resolution of the case. *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *see also In re Racing Services, Inc.*, 540 F.3d 892, 902 (8th Cir. 2008). Even then, such authority is uncommon and carefully circumscribed. The bankruptcy court retains discretion to "check any potential for abuse" and does not simply hand over the keys to the litigation. *Racing Services*, 540 F.3d at 902. This framework reflects the reality that debtors and trustees often have legitimate strategic reasons for deciding when—or whether—to pursue particular claims.

49.     The Seventeenth Stipulation bypasses that framework entirely. It does not require a claim-by-claim showing of benefit to the estate, does not preserve trustee oversight, and does not allow the Court to assess whether transferring litigation control is necessary or justified. Instead, it effects a blanket, ex ante assignment of investigatory and prosecutorial authority—precisely what the derivative-standing doctrine was designed to prevent.

50.     This defect has cascading consequences. By severing investigative authority from the Trustee's prosecutorial discretion, the Seventeenth Stipulation prevents the Trustee from conducting a unified assessment of claims, defenses, settlement value, and litigation risk. It also impairs the Trustee's ability to integrate litigation strategy with other statutory duties, including cash collateral management, intellectual-property enforcement, claims administration, and evaluation of plan feasibility. An investigation that the Trustee cannot control, and litigation that the Trustee cannot direct, is incompatible with the trustee's role as the estate's fiduciary.

51.     In sum, while § 1106(a)(3) affords the Court flexibility to direct investigations and appoint examiners, it does not authorize the Court—or the parties—to divest the Chapter 11 Trustee of control over estate litigation. By contractually transferring investigative and prosecutorial authority to a Grantor Trust without the requisite findings or safeguards, the

Seventeenth Stipulation impermissibly impairs the Trustee's statutory duties and must be modified to restore trustee control, subject only to properly granted, claim-specific derivative standing where appropriate.

> ### iii.    *The Seventeenth Stipulation Functionally Prevents the Trustee from Performing his Statutory Duty to Review and Administer Claims.*

52.    One of the Chapter 11 Trustee's most fundamental statutory duties is to examine proofs of claim and object to the allowance of any claim that is improper. *See* 11 U.S.C. §§ 704(a)(5), 1106(a). That duty requires the Trustee to evaluate claims holistically—considering validity, amount, priority, insider or related-party status, offsets, defenses, and how particular claims interact with estate assets, litigation, and intellectual property rights.

53.    The Seventeenth Stipulation makes that duty practically impossible to perform. By routing estate value into a GUC Escrow that is earmarked for distribution outside of a plan, the Seventeenth Stipulation presupposes the allowance and payment of claims before the Trustee has completed (or, in some instances, even begun) a meaningful claims review process. As the Stipulation makes clear, once funds enter into the GUC Trust, it is no longer property of the Stoli Debtor's estate. Seventeenth Stipulation at ¶ 5(i). Even if the Trustee reconciled all general unsecured claims, the GUC Ombudsman is under no authority to honor the treatment of those claims and can distribute funds from the Stoli GUC Escrow in any matter or amount because such funds are no longer property of the estate under the Court's jurisdiction.

54.    Nor does the Seventeenth Stipulation provide a workable mechanism for the Trustee to object to claims while escrowed funds are being accumulated for distribution. If a claim is disputed, contingent, or unliquidated, the Trustee must decide whether to object, reserve, negotiate, or litigate. The GUC Escrow structure short-circuits that process by pre-committing

estate liquidity to a creditor class without regard to whether individual claims are valid or subject to objection.

55.    Put simply, the Trustee is left with responsibility but without tools. He is charged with reviewing claims, but deprived of control over the assets, litigation posture, and leverage necessary to assess claims tied to intellectual property, related-party conduct, or estate causes of action. A trustee cannot meaningfully object to claims while distributions are effectively pre-wired and while key factual and legal predicates to claim allowance sit outside his authority.

56.    The Trustee does not seek to delay or deny recoveries to general unsecured creditors. He seeks only to preserve a claims administration process that functions as Congress intended—one in which the Trustee first investigates, evaluates, and resolves claims, and only then facilitates distributions through Code-compliant mechanisms pursuant to the absolute priority rule.

### iv.    The Seventeenth Stipulation Undermines the Trustee's Ability to Assess Feasibility and Formulate an Exit Strategy.

57.    Section 1106(a)(5) requires a Chapter 11 trustee, "as soon as practicable," to file a plan of reorganization or liquidation, or to recommend conversion or dismissal of the case. 11 U.S.C. § 1106(a)(5). That statutory obligation necessarily requires the trustee to evaluate feasibility, liquidity, asset control, litigation posture, and the economic consequences of alternative case trajectories. A trustee cannot fulfill that duty where material aspects of value, governance, and distribution are predetermined by a stipulation entered before his appointment.

58.    The Seventeenth Stipulation materially impairs the Trustee's ability to assess feasibility of a plan because it fixes core economic and governance variables that must remain flexible during plan formulation. By pre-committing estate value to a GUC Escrow, divesting the Trustee of control over intellectual property and related causes of action, and constraining the Trustee's discretion over cash collateral, the Seventeenth Stipulation removes the levers the

Trustee must evaluate in determining whether a confirmable plan is achievable—or whether conversion or dismissal is in the estate's best interest.

59.     As a result, the Seventeenth Stipulation functions as a *de facto* sub rosa plan. A sub rosa plan exists where an order dictates the substantive terms of a reorganization—such as who controls estate assets, how value is allocated, or which creditors are paid—without the procedural protections of confirmation. *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) (recognizing an impermissible sub rosa reorganization when "it had the practical effect of dictating some of the terms of any future reorganization plan."). Here, the Seventeenth Stipulation answers plan-level questions in advance of the plan process, leaving the Trustee with little ability to propose, test, or negotiate alternative outcomes consistent with §§ 1121–1129.

60.     The impairment of feasibility analysis is not limited to plan proposal. Section 1106(a)(5) equally requires the Trustee to assess whether conversion or dismissal is warranted. *See* 11 U.S.C. § 1106(a)(5). Yet the Seventeenth Stipulation's distribution mechanics raise serious concerns under *Jevic Holding Corp.*, 580 U.S. 451, because the Seventeenth Stipulation's mandates as to estate value route estate value to pre-stipulation professionals and general unsecured creditors outside a confirmed plan and without findings regarding allowance, priority, or feasibility.

61.     If the case were converted or dismissed while the Seventeenth Stipulation remains in place, the Trustee would face an untenable position: recommending a statutory outcome that risks non-consensual priority-skipping. That legal uncertainty directly undermines the Trustee's ability to discharge his § 1106(a)(5) duty to recommend a lawful and feasible path forward.

62.     The Trustee does not seek to undo consensual value. He seeks targeted modification of the Seventeenth Stipulation so that feasibility analysis, claims administration, statutory directives, plan formulation, and any end-of-case distributions occur through the mechanisms the Bankruptcy Code prescribes, with full consideration of statutory priorities and creditor protections. Only then can the Trustee fulfill the role Congress assigned him.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court reconsider and modify the Stipulation to (i) restore the Trustee's statutory authority over estate operations, intellectual property, related party contracts, litigation, and claim's administration; (ii) eliminate or suspend provisions that mandate non-operational diversions or pre-commit estate value outside a plan; and (iii) grant such other and further relief as is just and proper to permit the Trustee to discharge his fiduciary duties in the interests of the estate and all creditors.

Dated: February 19, 2026

Respectfully submitted,

**THOMPSON COBURN LLP**

By: */s/ Liz Boydston*
Katharine Battaia Clark (SBN 24046712)
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
Alexandra E. Rossetti (SBN 24125390)
Thompson Coburn LLP
2100 Ross Ave., Suite 3200
Dallas, Texas 75201
Tel.: (972) 629-7100
Fax: (972) 629-7171
kclark@thompsoncoburn.com
lboydston@thompsoncoburn.com
arahn@thompsoncoburn.com
arossetti@thompsoncoburn.com

- and -

Max Schlan (*pro hac vice* pending)
488 Madison Ave, 14th Floor
New York, New York 10022
Tel.: (212) 478-7200
Fax: (212) 478-7400
mschlan@thompsoncoburn.com

*Proposed counsel for Bill Patterson, Chapter 11 Trustee of Stoli Group (USA), LLC*

## CERTIFICATE OF SERVICE

I certify that on February 19, 2026, a true and correct copy of the foregoing document was filed electronically with the Court to be served by operation of the Court's CM/ECF system upon all of the parties registered to receive such notice.

*/s/ Katharine Battaia Clark*
Katharine Battaia Clark